JAMES M. MILLER *against* MICHAEL R. BURKE.

(Decided December 6th, 1875.)

On a sale made pursuant to a decree of the Supreme Court, under the direction of a referee, a piece of land, which, on the map according to which the land was sold, was divided into seventeen distinct lots, and numbered from 227 to 244, was put up and sold to the defendant for a gross sum under the directions of the referee, that those lots so numbered on the map should be sold together. *Held*, that this constituted the sale of but one *parcel* of land within the meaning of the terms of sale which provided that the purchaser should pay "the auctioneer's fee of twenty-five dollars for each *parcel* sold."

*Quære*, whether an auctioneer selling land under the directions of a referee in a judicial proceeding can maintain an action for his fees against a purchaser at the sale, even when the terms of the sale provide for payment of his fees by the purchaser.

*It seems* that an auctioneer can maintain an action for his fees without showing that he is duly licensed. Per LARREMORE, J.

APPEAL by defendant from a judgment of this court against

him for $574, besides costs, entered on the report of Thomas W. Clerke, Esq. appointed a referee to hear and determine the issues.

The action was brought to recover auctioneer's fees for selling twenty-one (21) parcels of land which the plaintiff alleged the defendant had purchased at a sale held by him, and at the rate of $25 for each parcel. The defendant in his answer, denied any knowledge or information sufficient to constitute a belief as to whether the plaintiff was a duly licensed auctioneer, as in the complaint he alleged he was, and also denied that he had purchased twenty-one (21) parcels of land, but admitted that he had purchased three (3) parcels, the auctioneer's fees on which he alleged he had tendered to the plaintiff who had refused to accept them.

The facts of the case as they appeared on the trial, were as follows :

Pursuant to a decree of the Supreme Court, made in a matter therein pending, entitled, " In the matter of the petition of Evalina M. Bliss and others, for the sale, &c. of land devised by Robert Swift Livingstone, deceased," taken under the act of 1871 (L. 1871, ch. 53), relative to lands in the city of New York, devised by Robert Swift Livingstone, deceased, certain real estate was sold under the direction of Maunsell B. Field, Esq., the referee appointed for that purpose. The plaintiff was employed by the said referee as an auctioneer to conduct such sale, at which the defendant purchased twenty-one lots or gores of land, and the same were subsequently conveyed to him by said referee. The terms of sale as publicly announced by the plaintiff, contained among others, a condition that the purchaser of the premises or any portion thereof, should at the time and place of sale, sign a memorandum of his purchase, and pay in addition to the purchase money, "the auctioneer's fee of $25 for each parcel sold." Annexed to the terms of sale, was a copy of the public advertisement thereof, in which the premises in question were described by numbers on a certain map therein referred to. A copy of this map was used at the sale, and the property sold by it ; and the defendant purchased by lots from 227 to 244 inclusive at " one knock down," according to

the trade parlance, and signed the memorandum required by the terms of sale, with which he thereby promised and agreed to comply. The defendant purchased two other lots and a stable at said sale on separate bids. By direction of the referee, the lots Nos. 227 to 244 had been sold together.

*William Ware Peck* and *William H. Newman*, for appellant.

*Charles A. Jackson*, for respondent.

CHARLES P. DALY, Chief Justice.—I cannot agree with Judge Larremore,* that the plaintiff was entitled to recover a separate auctioneer's fee of $25 for each of the lots from No. 227 to 244 inclusive. The auctioneer's fee was fixed by the terms of sale, which were printed and advertised, as a general notice to the public, by the referee, under whose direction the sale was made. This being the case, it was not in the power of the auctioneer to change or vary the terms of sale, unless with the consent or by the authority of the referee ; of which there was no proof by any such announcement at the sale, as he and the plaintiffs allege was made, and the defendant's witnesses deny.

By the terms of sale, the purchaser was to pay, "in addition to the purchase money, the auctioneer's fee of $25 00 for each parcel sold." The gore from numbers 227 to 244 inclusive, on the map, was sold as one parcel, for one bid, at one time, and I cannot agree in the conclusion that because this long and narrow gore, which faced on no street, was, upon the map, divided into lots of 25 feet in breadth, and varying in length with the acuteness of the angle, from 58 feet to about 1 foot in length, with the exception of No. 227, numbered from 227 to .244 inclusive, the auctioneer, for thus selling them collectively, at one time and for one bid, would be entitled to a fee of $25 for each subdivision of the gore marked upon the map, or seventeen distinct fees of $25 each. One of the many meanings of the term *parcel* is a number or quantity of things put up together

---

* The opinion of Judge Larremore is printed *post*.

(see Webster's Dict. unab. "*parcel*"); and within this meaning the lots from 227 to 244 inclusive, were put up together and sold as one parcel. Lots 225 and 226 were sold as distinct parcels, being large lots, 25 feet front and 98 feet deep, and facing upon the avenue; but the residue of the gore, from Nos. 227 to 244 inclusive was sold as one thing, though subdivided upon the map into separate lots of unequal dimensions, in consequence of the shape of the gore. For selling this, which was sold as one parcel, the auctioneer was entitled by the terms of sale to a fee of $25, and nothing more. If those unequal divisions of the gore had been sold separately, or any of them separately, then each one separately sold, would, within the meaning of the terms of sale, constitute a parcel, and the auctioneer would be entitled to a fee of $25 for selling it.

An attempt was made to show that by the usage and custom in this city, upon sales of this description, the auctioneer was entitled to a distinct fee of $25, according to the subdivisions or numbers marked upon the map, although the whole was sold collectively, at one time, as one thing and for one bid. The plaintiff and the two auctioneers, who undertook to prove the existence of such a custom, answered affirmatively to a carefully prepared question, but when further interrogated, their evidence amounts to nothing more than their opinion, that the auctioneer would be entitled to 17 distinct fees of $25 each; that they would charge it under like circumstances. This was not evidence showing the existence of a well established and universal usage in the city to that effect. Not a single instance was stated by them in which such a charge was made and paid by the purchaser. Whilst, on the contrary, one auctioneer, called by the defendant, Keneally, testified that the parcels sold, in the language of the witness, would be one "knock down." That when the gore was put up and sold, as in this instance, in one parcel, the fee would be $25, unless it was announced at the time of sale that the fee would be $25 for each lot; that if it were publicly announced then that the purchaser would be charged $25 for each parcel, or numbered lot, the auctioneer would be entitled to it. Another auctioneer, Maguire, testified that if he sold the entire gore as one entire lot or parcel, at one knock

down, when by the terms of sale the auctioneer's fee was to be $25 for each parcel, he would consider himself entitled to charge but $25; that, however, he would be loth to sell a parcel of that kind for a fee of $25, and would try and arrange his terms of sale before he went to the sales-room, so as to have a larger fee for selling so much ground. That the word *parcel*, as he understood it, means all that is put up at one knock down; that he had been an auctioneer for ten years, engaged in the real estate business, and considered himself perfectly familiar with the usages and customs of auctioneers. Another auctioneer, Wilkins, one of the principals of the house of Muller, Wilkins & Co., and who had been engaged as an auctioneer for 26 years, when asked in respect to usage, testified that the whole thing depends on the meaning of the word *parcel;* that he did not know what the auctioneers and purchasers considered a parcel; that there was no usage or custom amongst the auctioneers that would explain it; that he did not know what was meant by the word *parcel* in this case by the terms of sale; and that he never saw it before used in that way in the terms of sale. It would certainly be remarkable, if any such custom or usage as the plaintiff claimed was well and universally established in the city, that these experienced experts should not be acquainted with it.

This evidence entirely failed to establish the existence of any usage or custom which would control and give the interpretation claimed to the word *parcel*, as used in the terms of sale. It is therefore not to be understood in the light of any usage or custom which has given to it a special meaning in its application to sales of that description; but the word is to be understood and interpreted according to its usual and ordinary signification.

The plaintiff testified that the defendant was informed, before the sale that the auctioneer's fee would be $25 for each lot as numbered in the gore, but that may be understood as applying to the sale of the lots separately; for he does not state that he told them that that would be the case if they were sold collectively, at one " knock down " to use the language of the experts.

Judge Larremore is of opinion that the defendant's own

account of his interwiew with the plaintiff, prior to the sale, shows this.   He testified that he asked the auctioneer how the "little parcels" (lots in the gore) were to be sold, and was told that the referee proposed to sell them as one parcel; and when asked about the plaintiff's charges, that he was told that in case the gores were separately sold, the charge would be $25 apiece; that it was as much trouble to sell one as the whole lot; but that in case the gores were sold in one parcel, it would be entirely a different thing.   This testimony may possibly bear the construction which judge Larremore has put upon it.   But, in my opinion, it is too obscure and uncertain to warrant the conclusion that the defendant must have understood from this statement, that if the whole gore were sold together at one knock down, he would have to pay an auctioneer's fee of $25 for each lot into which the gore was divided upon the map. On the contrary, my interpretation of the language used by the plaintiff is, that if each lot or little gore were sold separately, he would have to pay a fee of $25 upon each one, as it was as much trouble to sell each one as to sell the whole; but if they (the lots or little gores) were sold as one parcel, it would be entirely a different thing.

But   even had it been otherwise, the auctioneer could not, by his mere statement to defendant, nor by any oral announcement he might make at the sale, change the terms of sale as they were printed and advertised, without the consent or authority of the referee, under whose direction the sale was made, of which consent and authority by the referee, as I said before, there was no evidence.

This would be my view, if such an announcement as the plaintiff and his auctioneer Fairchild testified was made at the sale.   But if the case depended upon that fact, then I think the weight of evidence was clearly against the finding of the referee.   The plaintiff's witness, Bleeker, and the experts examined by the defendant, testified that it was the custom to settle the auctioneer's fees in the terms of sale.   Bliss, whose wife was the plaintiff in the suit and judgment under which sale was made, testified that his instruction to the auctioneer and the referee was to have the gore, or as he called it "slip of

Miller v. Burke.

land" sold "together at one knock down, at one price for the whole." He, and a number of witnesses who were present at the sale, testified that nothing was said by the auctioneer about a distinct fee of $25 for each lot marked upon the map, upon the sale of this gore. Some of these witnesses were bidders; others were interested, some were standing close to the auctioneer, and all testified that nothing of that kind was said; that all that was stated by the auctioneer, was at the commencement of the sale; some of them testifying that he merely stated the terms of sale, others, that he said that his charge would be $25 for each lot sold; that when he came to the sale of this gore, nothing was then said about the terms, but that he simply said that he would put them up in one parcel. One of these witnesses testified that a by-stander asked what he was going to sell now, and that the auctioneer answered, "I sell from No. 227 to 244, altogether—make one parcel of it." Another witness, testified that he then took up the map, and said: "I will sell from 227 to 244 together, as one parcel;" that he announced this twice distinctly, and made no announcement then as to his fees or charges; nor do I understand the plaintiff or the auctioneer Fairchild to testify distinctly to anything more than this, when their testimony is carefully examined. I do not understand either of them to testify that any special announcement was made as to the fees, when the gore was put up and sold as one parcel in this manner. All that I understand them to say is, that before the sale was commenced, they gave it distinctly to be understood, that the auctioneer's fee would be $25 for each lot marked and numbered separately on the map, which may be interpreted as applying to the separate sale of any lot, without embracing the case of the sale of a number of lots as one parcel, at one knock down. We are required by the Code to review the findings of the referee upon questions of fact, and if the case depended upon the fact of such an announcement having been made, I think the conclusion would have to be that the referee's conclusion was not sustained by the evidence. I do not understand, however, the referee to have passed upon this fact, but to have found "that, by the printed terms of sale, which were publicly read aloud by the

plaintiff, that the purchaser was required at the place and time of such sale, to pay the auctioneer's fee of $25 for each parcel of land sold to him, and that the defendant, at the sale, became the purchaser of 21 of said parcels, and thereby agreed, as a condition of his purchase, to pay to the plaintiff $25 for each of said parcels," which conclusion, both of fact and law, was, in my opinion, erroneous, and the judgment ought to be reversed.

Robinson, J.—While fully concurring in the conclusion of Chief Justice Daly as to the legal effect of defendant's obligation under the terms of sale in evidence, regarded as his contract to pay $25 for the auctioneer's fee upon the sale in " each parcel," although it embraces all the gore lots Nos. 227 to 244 inclusive, and that such sale was but of one parcel, I am of the further opinion, that the sale having been made by and under the direction of a referee, under and in pursuance of an order or decree of the Supreme Court, no right of action accrued to the plaintiff, as auctioneer on the sale, against the defendant as purchaser under the prescribed terms of sale, for any auctioneer's fee.  First, there was no privity of contract or obligation between the defendant and the auctioneer, as the former simply agreed with the referee as part of the consideration, for the purchaser to pay him, in addition to the purchase money, the auctioneer's fee, and that was at most an executory agreement, made *inter partes*, as to the amounts to be paid the referee making the sale, *to complete the purchase*, and not one for the benefit of the auctioneer (*Garnsey* v. *Rogers*, 47 N. Y. 233); and, Second. The sale being in a judicial proceeding, conducted by an officer of the court, under its order or decree, although by the prescribed terms of sale he required that the purchaser of any portion of the premises sold should " sign a memorandum of his purchase, and pay, in addition to the purchase money, the auctioneer's fee of twenty-five dollars for each parcel sold," which was so signed by the defendant, it established no privity of contract between plaintiff, the auctioneer, and the defendant, the purchaser, for the additional reason to that before stated, that such subscription to or signing of the memorandum or terms of sale constituted no contract.  The

referee, as such mere officer of the court, stood in no such relation to any of the parties that he personally could impose any terms, by contract or otherwise, *that would be obligatory* upon any one interested or concerned in the execution of the decree. He was the mere officer of the court, vested with no further authority than it conferred upon him, and whatever he did, or was done by any one under his delegated authority, was subject to the complete supervision and control of the court. The purchaser, by signing the terms of sale, entered into no contract, as the court was the other party to the transaction, but by his purchase and signing the memorandum simply subjected himself to the jurisdiction and control of the court for enforcing specific performance of the terms of his purchase, or making him answer in damages for non-compliance therewith (*Miller* v. *Collyer*, 36 Barb. 251; *Willetts* v. *Ast*, 26 How. 343; *Graham* v. *Bleaklie*, 2 Daly, 55). The court has supervision of the sale, and the right to enforce complete compliance with its terms, upon action taken by the referee or some party interested in the execution of the decree. All such expenses as were incurred by the referee were subject to its examination and allowance, and while he acted within his strict line of duty, no exaction could be made even as against him by any auctioneer employed to effect the sale except for a proper and legal charge. As against the purchaser, however, the auctioneer acquired, under the terms of sale, no right of action against him for his fees or charges.

I concur with Chief Justice Daly in the reversal of the judgment.

CHARLES P. DALY, Chief Justice.—The further objections to the judgment presented by Judge Robinson are very serious ones, but as they were not discussed upon the argument, and as we agree that the judgment must be reversed upon the grounds stated in my opinion, I think it better, as there may be a new trial, not to pass upon them now, which will afford an opportunity for the careful examination and discussion of them when the cause is tried again, if there should be another trial.

LARREMORE, J., dissenting [after stating the facts as above given].—The main question raised on the trial, was whether defendant was liable for a separate auctioneer's fee for each of said lots, Nos. 227 to 244, inclusive. The referee who tried this case found for the plaintiff, on all the issues presented by the pleadings, and from the judgment entered upon such decision appeal is taken.

Let us now examine the points made upon this appeal, and dispose of them in the order named.

*1st.* It is urged, that no valid contract for the sale of these lots was ever made, as the same was never subscribed by the vendor or his lawfully authorized agent, as required by the statute.

Independent of the testimony of plaintiff's clerk, showing an entry of said sale in plaintiff's " sales book," the defendant, who treated said contract as subsisting, and carried it out with the vendor according to its terms, cannot be allowed to question its validity in a collateral proceeding.

*2d.* It is claimed that the agreement contained in the terms of sale to pay " *the auctioneer's* fee," inured to the benefit of Field, the referee, and gave plaintiff no right of recovery thereon.

Such a theory cannot be upheld. Defendant, knew that plaintiff was the auctioneer to conduct the sale. His name appeared in the advertisement annexed to the terms of sale, and the contract to pay the auctioneer's fee, was for his benefit only, and not of Field, the referee. Such payment was one of the conditions of defendant's purchase, and his promise in relation thereto, established a privity of contract between the plaintiff and himself (*Bleecker* v. *Franklin*, 2 E. D. Smith, 93 ; *Muller* v. *Maxwell*, 2 Bosw. 355).

In each of these cases, the agreement by the purchaser was the same as in this case, to pay the auctioneer his fees.

*3d.* Another objection to the validity of this judgment is want of proof that plaintiff was a duly licensed auctioneer. He testified as a fact that he was, without objection from defendant's counsel, who subsequently claimed on the motion

for a nonsuit, that such testimony was mere matter of opinion and not of fact.

I cannot assent to any such stringent rule as applicable to this case. It was not instituted to recover a penalty for acting without a license, the production of which would have been the best and only evidence in defense; plaintiff's right of recovery rests in a contract in which his official position as an auctioneer, was impliedly recognized by the defendant. It is unnecessary however to follow the line of argument upon this point, for it was decided by this court in *Bogart* v. *O'Reagan* (1 E. D. Smith, 590), that a sale made by an unlicensed auctioneer would not necessarily be invalid, and that in a suit brought by an auctioneer, he was not required to prove that he had been regularly licensed in pursuance of the laws of the State. The reasoning in that case applies with equal force to a license under the laws of the United States.

We pass now to the consideration of the remaining ground of appeal.

*4th.* That defendant's liability, if any existed, as to auctioneer's fees on the sale of said lots Nos. 227 to 244 inclusive, must be limited to one fee, for the sale of said lots as one parcel.

If there were before us nothing but the naked fact of the sale of said lots as one parcel, we should scarcely hesitate in conceding the proposition advanced. But the testimony is of such a character, that it becomes necessary to inquire into the intention of the parties upon this point. How did they understand this contract as to the payment of auctioneer's fees?

That the referee contemplated the sale of this property by separate and distinct lots or parcels, is evident from the fact that he caused a map to be made (showing such subdivision thereof), which was used on the sale. That defendant had knowledge of such intention on the part of the referee, appears by his own testimony. "He (plaintiff) said in case the gores were separately sold, the charge would be $25 apiece," but if sold as one parcel, "he (plaintiff) said that would be entirely a different thing."

Prior to the sale then, the defendant knew, that "the

Miller v. Burke.

auctioneer's fee of $25 for each *parcel* sold," meant, or was intended to mean, that fee for each *lot* or gore described on said map, which should be separately sold. Thus far, no misunderstanding could possibly exist as to the interpretation of the term "parcel."

At the sale, defendant purchased lots Nos. 225 and 226, as separate and distinct parcels. But the said lots Nos. 227 to 244 were by direction of the referee sold in one parcel.

The plaintiff testified, "At this sale I made an announcement that by the terms of this sale, the auctioneer's fees would be $25 for each numbered lot or gore, irrespective of size. I made this three or four times."

This testimony is positive and explicit as to plaintiff's right, *with defendant's knowledge,* to recover a fee for each of said lots or gores numbered on said map. The defendant positively denies that any announcement as to his fees was made by the plaintiff at said sale.

He is corroborated by the negative testimony of some three or four witnesses who testified that they were present at such sale, and did not hear any such announcement.

A conflict of evidence thus arose upon a material issue, which the court below has decided in plaintiff's favor. The record discloses no such preponderance of positive evidence in defendant's behalf as to authorize the reversal of such decision.

In this view of the case, the exceptions relating to the admissibility or competency of testimony as to usage or custom in relation to the fees of auctioneers, are immaterial, for the plaintiff's case has been established independent of such testimony. The judgment should be affirmed with costs.

Judgment reversed.