MARGARETTA F. JOHNSON, as Executrix of THOMAS CONNAROE, Deceased, Respondent, *v.* WILLIAM B. SIRRET and AUGUSTUS F. SCHEU, Appellants, Impleaded with JACOB MORGANSTERN.

CONTRACT BY JOINT PURCHASERS OF LAND TO PAY BROKER, ON FUTURE SALE OF TRACT OR PARCELS — SALE OF UNDIVIDED INTEREST. A contract by the joint purchasers of a tract of land, conveyed to them in undivided equal parts, to pay the broker who negotiated the transaction a certain sum per acre whenever a sale of the land should be effected, and a proportionate part in case the land should be sold in parcels, *held*, to contemplate a joint conveyance of the whole or a part of the land, and not to apply to a transfer by one of the joint purchasers of his undivided interest.

*Johnson* v. *Sirret*, 83 Hun, 317, reversed.

(Argued April 21, 1897; decided May 4, 1897.)

Appeal from a judgment of the General Term of the Supreme Court in the fifth judicial department, entered February 8, 1895, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Circuit without a jury.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Tracy C. Becker* for appellants.

*Clark H. Timerman* for respondent. The defendants' exception to the findings of fact by the court that the conveyance to Williams was a sale of the interest of the defendant Morganstern in said premises is not well taken. (*Bradstreet* v. *Clarke,* 12 Wend. 602; *Hitchcock* v. *Dundas,* 12 How. [U. S.] 271.) The deed by Scheu, as trustee, cannot be attacked collaterally in this action. (*Johnson* v. *Bennett,* 39 Barb. 237; *Dodge* v. *Stevens,* 94 N. Y. 209; *Harrington* v. *E. C. S. Bank,* 101 N. Y. 257.) The sale of an undivided interest in the premises entitles the plaintiff to a recovery *pro tanto.* (*Tipton* v. *Feitner,* 20 N. Y. 423; *Swift* v. *Opdyke,* 43 Barb. 274; *Bank of Montreal* v. *Recknagel,* 109 N. Y. 482; *Azema* v. *Levy,* 25 N. Y. S. R. 860; *Miller* v. *Burke,* 6 Daly, 173; *State* v. *Brown,* 17 Am. Dec. 562.) The liability of the defendants is joint. (*Alpaugh* v. *Wood,* 58 N. J. L. 638; *Muzzy* v. *Whitney,* 10 Johns. 225; *Lawrence* v. *Kidder,* 10 Barb. 641.)

Bartlett, J. The three defendants, Sirret, Scheu and Morganstern, on the 9th of September, 1887, entered into a written contract with one Thomas Connaroe, of which the following is a copy:

" For a valuable consideration to us in hand paid, the receipt whereof is hereby acknowledged, we, the undersigned, hereby agree to pay Thomas Connaroe the sum of thirty dollars ($30) per acre on the sale of the tract of land this day conveyed by Mary A. Johnson and Margaretta F. Johnson to

us, containing about one hundred and twenty-five (125) acres, whenever a sale of said land shall be effected, or the same shall be taken by legal proceedings, or the exercise of the right of eminent domain. If the same shall be sold or taken in parcels, a proportionate part shall be paid to said Connaroe at the time each parcel is taken or sold as aforesaid. Dated September 9, 1887."

The plaintiff, as the executrix of the will of Connaroe, seeks to recover upon this contract.

The.trial court found that an undivided quarter interest of the premises had been sold, and that Connaroe's representative was entitled to recover commissions upon that portion of the land at the contract rate of $30 per acre. The General Term affirmed the judgment.

The premises were conveyed by Mary A. Johnson and Margaretta F. Johnson, at the request of defendants, in the following proportions: To defendant Scheu, one-half; to defendant Sirret, one-quarter; to Martha Millet, one-quarter.

The defendant Scheu held one-quarter of the premises for the defendant Morganstern, and Martha Millet held title for the benefit of one Patrick Millet.

On the 11th of April, 1890, Morganstern parted with his undivided quarter interest, and by his direction Scheu conveyed it to one John L. Williams.

Williams was sworn at the trial, and, after stating in detail the transaction, said :

" In other words, I stepped into Morganstern's shoes and took his interest. As I understood from the parties, I did not pay any additional consideration, except what had already been advanced."

The question presented by this appeal is whether the conveyance by Scheu to Williams of Morganstern's undivided quarter interest was a sale of a parcel of the land within the meaning of the contract.

The courts below have held that it was, but we are unable to adopt this construction.

Connaroe, as a broker or negotiator of the sale, had purchased

the premises for the three defendants, and the vendors were to convey as the purchasers should direct.

Sirret and Scheu became seized of an undivided quarter interest each as their own property, and Scheu held another undivided quarter interest for Morganstern.

Scheu testified that Morganstern was not prepared to make the payments on his share, and it was arranged that Scheu should take title, make the payments, and when premises were sold he was to reimburse himself and pay Morganstern his share of the profits.

Scheu advanced over $6,000 ; times were hard, and, after several years of waiting, he induced Morganstern to find some one to take his interest.   In pursuance of this suggestion Morganstern produced Williams, who paid Scheu his advances, but no new consideration, and received the conveyance of Morganstern's undivided quarter interest.

The original transaction, resulting in the contract, was evidently a speculation in which the defendants became the owners of one hundred and twenty-five acres of land, and the broker, or negotiator, postponed the payment of his commissions until the premises were sold, or some parcel thereof, or the same should be taken by legal proceedings or the exercise of the right of eminent domain.

Counsel agree that defendants are jointly liable under this contract, and it is apparent that the intention of the parties was to pay the broker his commissions when the premises were sold, or any part thereof.

The contract contemplates a joint conveyance of a part or the whole of the land and a joint payment of commissions.

It is not reasonable to assume, in the absence of any express provision to that effect, that the defendants Sirret and Scheu agreed to pay the broker his commissions on the transfer of Morganstern's undivided quarter for his own convenience and benefit and in which they had no interest whatever.

It is the plain meaning of the contract that when these joint purchasers made a joint sale of any portion or the whole of the premises they were to pay commissions.

It is urged that there has been a sale of an undivided quarter interest, and that the broker is deprived of his commissions on that transaction. The answer to this suggestion is that the contract did not provide for this contingency.

It was evidently supposed that the joint purchasers would sell the land as a whole or in parcels, and the broker was to be paid at the time of the sale or sales. The transfer of undivided interests among themselves, or to third parties, was not considered.

The defendant Morganstern was unable financially to carry his undivided interest, and he induced Williams to take his place in the venture.

We regard this as a transaction neither within the letter nor the spirit of the contract, and are of opinion that the judgment appealed from must be reversed and a new trial ordered, with costs to abide event.

O'BRIEN, J. (dissenting). The facts in this case are few and simple. The three defendants in this action employed the plaintiff's testator as their agent to purchase for them and another party one hundred and twenty-five acres of land in Buffalo. He performed the services and purchased the land, which was conveyed to three of the parties as tenants in common. These three parties took each an undivided one-fourth interest, except one of them, who took one-half, holding one share, or one undivided quarter, in trust for the fourth party. There were, then, four parties interested in the purchase, each holding one-fourth. They purchased and held the lands in anticipation of an advance in value and a sale in the future at a profit. In order to secure to the agent or broker who acted for them his compensation for his services, the three defendants in this action executed and delivered to him the following written agreement:

" For a valuable consideration to us in hand paid, the receipt whereof is hereby acknowledged, we, the undersigned, hereby agree to pay to Thomas Connaroe, the sum of thirty ($30.00) dollars per acre on the sale of the tract of land this day con-

veyed by Mary A. Johnson and Margaretta F. Johnson to us, containing about one hundred and twenty-five (125) acres, whenever a sale of said land shall be effected, or the same shall be taken by legal proceedings or the exercise of the right of eminent domain. If the same shall be sold or taken in parcels, a proportionate part shall be paid to said Connaroe at the time each parcel is taken or sold as aforesaid."

It will be seen that the stipulated compensation was to be paid to the agent in full " on the sale of the tract of land," and in case of a sale of a parcel, less than the whole, a proportionate part of the compensation, at the time of the sale of such parcel.

It is conceded that the promise in this agreement is joint, and if there is any liability at all, the defendants must respond jointly. The whole tract was not sold, and the only question in the case is whether there has been a parcel sold so as to entitle the agent to the proportionate compensation, within the meaning of the contract. It is found by the trial court and conceded, that one of the joint tenants has conveyed an undivided share or one-fourth interest to a stranger to the enterprise by deed of bargain and sale, and that the grantee is now vested with such undivided interest. The defendants contend that this was not a sale of a parcel within the meaning of the contract, and that is the only defense to the action.

The courts below have repudiated this construction and have held that the plaintiff was entitled to recover. The learned judge who gave the opinion at General Term very properly remarked that if the defendants' construction of the contract was permissible then each joint tenant could successively convey his undivided share and thus alienate the whole tract, and no one would be liable to the agent for the commissions which he had earned and which were stipulated to be paid to him on the sale of the land or any portion of it.

Of course this is what the defendants' position logically leads to. No purchaser of such an interest would be liable, since he never agreed to be, and the land is not bound since the compensation is not a charge upon the land. The learned

counsel for the defendants, evidently appreciating the force of this suggestion, answered it in this language, which is quoted from his brief:

"The argument of counsel for respondent and of the General Term opinion, that one by one the undivided interests might be conveyed and thus plaintiff's testator be completely deprived of any commissions under his contract, is fallacious; *when all the interests were thus conevyed Connaroe would have a cause of action.*" This seems to me to be practically an admission that there is no defense to this action, since if it be true, as the defendants' counsel admits, that such a transfer by each and all the joint tenants of the undivided interests is a sale of the whole tract, within the meaning of the contract, entitling the agent to the whole compensation, it must be equally true that a like transfer by one of the joint tenants of his undivided share is a sale of a part or parcel of the tract entitling him to a proportionate share of the whole compensation. To say that when the entire interests are thus transferred the entire compensation of the agent is due, and, at the same time, to assert that if any of the joint tenants retained the hundredth part of a share, or even a smaller portion of a share, the agent is entitled to no compensation, is, to the common mind at least, utterly illogical and inconsistent. The word parcel, when used in a contract, is elastic enough to enable a court to do justice, and it is not so rigid as to constrain it to perpetrate injustice. It is a very narrow and most inequitable construction of this contract to hold that a part or parcel of the land was not alienated. The words of the contract were selected and used by the defendants, and if they are ambiguous or lacking in precision, they are to be construed most favorably, not to themselves, but to the agent. It was said by this court in *Russell* v. *Allerton* (108 N. Y. 288) that a contract should never be so construed as to put one party wholly in the power or at the mercy of the other when the construction depends upon the meaning of words or phrases that are not precise or that may be understood in a different sense. But that is precisely what the defendants' construction

8

does in this case. It permits the defendants to receive all the profits of the transaction and to reap all the benefits that the contract was ever intended to confer upon them, and at the same time deprives the agent of any reward for his services. The purpose that they had in view in making the contract was to realize a profit from an advance in the value of the land. That purpose will be subserved quite as well by the transfer by each tenant of an undivided interest, as was done in this case, as by the conveyance of a distinct parcel severed from the rest. It may be even better promoted, and then each tenant may pocket his profits and deprive the agent who rendered the services of the whole compensation, always providing that the last tenant retains the most infinitesimal fractional part of his share. Such a construction of a contract intended to secure mutual rights and mutual benefits is scarcely consistent with common honesty since it holds out to one side the temptation to evade his promise or oppress the other. If it is said that the construction given to this agreement in the court below might make all the tenants liable upon such a sale of the interest of one, that is only because they have agreed jointly to pay upon a sale of the whole or a part, and it never can be inequitable or unjust, since, if one tenant pays more than his share, he may call on the others for contribution. It is clear that the parties never intended to make the agent's right to compensation depend upon the sale of a distinct parcel severed from the rest. When lands are held by numerous tenants in common for the purpose of speculation, they are as frequently transferred by conveyance of an undivided interest by one or all of the tenants as in any other way. That mode of alienation is entirely consistent with the intention of the parties and the nature and purpose of the transaction. The defendants, in case of an advance in value, could reap the profits of the transaction as well by such a transfer as by a sale of separated parcels, and a transfer that would secure to the defendants the benefits of the contract would also be sufficient to entitle the agent to his commissions. The contract should have a reasonable construction, and we have no

right to say arbitrarily that the parties did not intend by the sale of a parcel the transfer of an undivided share unless it can be shown that a parcel necessarily means something different from a share in common language.

The word parcel has a very wide and varied meaning which clearly embraces such an interest as was conveyed in this case. Bouvier defines a parcel as "*part of an estate*," and it is quite certain that a part of an estate was conveyed in this case. In the Century Dictionary it is defined as follows: "A part, either taken separately or belonging to the whole, a share, a portion, a constituent or integral part, an indefinite quantity or measure. A separate or separable part." It is obvious that the right or interest conveyed in this case was a share, or a portion or a separable or integral part or an indefinite quantity, and, therefore, a *parcel* within the fair import of the term. It has been held that the words "a tract or parcel" may mean a section, a half section or a quarter section. (*Martin* v. *Cole*, 38 Iowa, 146.)

Where a purchaser at auction sale was bound by contract to pay an auctioneer's fee of $25 for each *parcel* sold, it was held that the sale of a tract or piece of land containing seventeen distinct lots, numbered and marked on the map and sold at one bid, constituted but one parcel. (*Miller* v. *Burke*, 6 Daly, 171.) The case of *Vrooman* v. *Weed* (2 Barb. 330) is instructive. The action was ejectment brought to recover a tract of land described in the declaration. The statute then provided that there might be a recovery of the whole land described or of a part, and that such part must be described by the jury with the same particularity as the whole in the declaration. The plaintiff could prove title to only an undivided share or interest in the land described, and was non-suited on the ground that he had not shown title to a *part* within the meaning of the statute. But the General Term reversed the judgment on the ground that a *part* did not necessarily mean a divided part, but included an undivided share, and that the jury could describe such a share in the verdict as accurately as they could a distinct or divided part.

The defendants agreed to pay the agent for his services in negotiating the purchase of the land whenever a certain thing transpired, namely, whenever the whole was sold, or whenever a parcel was sold. If in any fair view of the contract a parcel has been sold, then the defendants are liable on their promise. When this land was purchased by the agent and conveyed to the defendants, every one understood what was intended. The land was to be held by the four tenants in common in undivided shares of one-fourth each for speculative purposes. It was just as easy to sell the land in undivided shares as it was to hold it for sale in that way. But the defendants contend that by the language of the contract there is no sale unless either the whole tract is conveyed or a distinct part severed or separated from the rest, and this contention rests on nothing whatever except the use of the word *parcel* in the instrument. The defendants produce no authority to show that a parcel is necessarily a distinct piece of land, divided from the farm. On the contrary, we have seen that a parcel may be an undivided part or share, or a portion, whether separated or separable, and any of these words are sufficiently descriptive of the interest which was conveyed in this case.

The defendants have received all the benefits of their promise. They got the land, and one-fourth of it has been alienated to a stranger to the enterprise. He now owns one-fourth of the estate, and hence owns a part or parcel of it, though undivided, and not physically separated from the rest. The tenant who conveyed to him may have doubled his money, and the others, as they convey their shares from time to time, may thribble theirs without the slightest liability to pay the agent one dollar for his services, and all this simply because they have not sold the land in a particular way, or have not employed a surveyor who, with chain and compass, would have severed the one-fourth sold from the entire farm. The entire compensation agreed to be paid to the agent in this case was $3,750. Now, if the defendants, by one method of sale, are to make themselves liable to pay this sum, and by another method of sale can lawfully evade its payment, we may trust

to the weakness of human nature to follow the latter course. If this court is astute enough to discover that the sale by one tenant of his undivided quarter is not the sale of a parcel, within the meaning of the contract, then, of course, all the rest will be sold in undivided shares. It is only necessary, as the defendants' counsel suggests, to keep the smallest conceivable fractional part of a share, and they can afford to do that in order to evade payment of so large a sum of money. We are asked to so construe this contract as to produce that result. In my opinion such a decision would be neither sound law nor sound morals. The courts below have refused to point out a method to enable the defendants to deprive their agent of all compensation by giving the narrowest possible meaning to a single word, and I think we can safely and properly follow that decision.

Quite apart from any of the considerations that I have suggested, we ought to say, and can say, what this court has often said before, that it is a rule of law as well as of ethics, that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose that it was understood by the promisee, and that if it be doubtful, in view of the general tenor of the instrument, and the relations of the contracting parties, whether given words were used in an enlarged or restricted sense, other things being equal, the construction should be adopted which is most beneficial to the promisee. (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405; *Robertson* v. *O. E. Co.*, 146 N. Y. 24; *White* v. *Hoyt*, 73 N. Y. 510.) The argument of the learned counsel for the defendants seeks to reverse that rule, and to give the narrowest possible construction to a word in order to enable the promisors to evade their just obligations. If, as the case of *Vrooman* v. *Weed* (*supra*) decides, an undivided interest or share of the whole tract was a part, within the meaning of the statute, then, certainly, the interest or undivided share conveyed by one of the tenants in common in the case at bar was a part or *parcel* of the whole tract within the meaning of the contract.

Finally, in view of all this, it seems to me that it would be highly unjust for this court to deprive the wife or children of this deceased agent of his lawful earnings upon any such grounds as are suggested by the defense. From whatever point of view we may look at the case, whether it be the nature and purpose of the transaction itself, the intention of the parties, the harsh results which the defendants' construction of the agreement must inevitably produce, or the justice and equity of the plaintiff's claim, it is manifest that the decisions of the courts below were right. It is quite certain that if the agent in this case knew, or supposed, that the contract meant what the defendants' counsel claims, or that it was open to the construction that would deprive him of all compensation when the land was conveyed in shares or undivided interests, he would not have rendered the services upon the faith of it, or would have resorted to some other method of procuring compensation. It is equally certain that had the agent, at the time the defendants delivered the paper to him, suggested to them that by the use of a single word they were at liberty to deprive him of all compensation for his services by resorting to the device of selling the land in undivided shares, they would have rejected such a construction, or even such an intention, with indignation. This simply illustrates the force of the great moral and legal principle already referred to, which holds a party to the terms of his promise, according to the meaning which he knew the other party supposed the words to bear, and in the sense in which he himself intended at the time to be understood. The courts below took a just and intelligent view of this case, and nothing appears in the record to justify this court in overturning their decision.

The judgment should, therefore, be affirmed.

All concur with BARTLETT, J., for reversal, except O'BRIEN, J., who reads for affirmance.

Judgment reversed.