VAN ALLEN *vs.* HUMPHREY and GILBERT.

Where an ante-nuptial contract, executed previous to the act of 1848, for the protection of the property of married women, gave to the wife full power to control and dispose of her real estate, after marriage, as if she were a feme sole; *Held* that she could make a binding covenant to convey land at a future day, so as to form a consideration for the contract of the purchaser, to purchase.

*Held also*, that an assignee of the wife could maintain an action upon such contract, against the purchaser.

THE facts disclosed by this case were, that in the year 1844 Betsey Van Allen owned a piece of land, on which was a valid mortgage executed by her grantor, to secure a sum of money due to a third person. Subsequently, in contemplation of marriage with one Emmons, she entered, into an ante-nuptial contract with him, by which it was agreed that he would refrain from all interference with any property she owned and possessed at the time of the marriage, and that she might always enjoy the same to her sole and separate use, and the rents and profits thereof, and dispose of, and manage the same, as she might deem proper. This contract was made in 1846. The marriage was had, and afterwards, on June 29th, 1848, the said Betsey entered into a written contract with the defendants to sell to them the said land, for $687,70, and the defendants covenanted to pay

her that sum, one hundred dollars by the first of November, 1848, and the balance in six years, with interest annually. The said Betsey covenanted to execute, or cause to be executed and delivered to the defendants a good and sufficient deed for said land in six years; and it was mutually agreed that if she should fail to procure a deed of said land in six years then the amount the other party should have paid on the contract, should be applied on a bond and mortgage which she then held against them; and if she procured a deed before six years, then the other party was to take it and give a bond and mortgage for the amount due on the contract. This agreement was sealed and signed by the parties to it. She had possession of the land at the date of the contract, and then put the defendants in possession, and they had held undisturbed possession ever since. On March 21st, 1851, she assigned the above contract to the plaintiff, and nothing having been paid upon it by the defendants, he instituted this action. The defendants proved that the mortgage outstanding at the time Mrs. Emmons' title accrued, had been foreclosed pursuant to statute, on the 28th of June, 1850, and the land purchased by one Norton Stanly, who became the legal owner thereof. Betsey Emmons, at the date of the said contract, held and still holds a bond and mortgage against the defendants, for $512 30, to be paid in six years from 29th June, 1848, with interest annually, secured on other property than this land. The justice presiding at the trial ordered a verdict for the plaintiff, subject to the opinion of the court under section 265 of the code.

*J. J. Van Allen,* for the plaintiff.

*Grover & Simmons,* for the defendants.

*By the Court,* SHANKLAND, J. This cause must be decided upon the law, as it stood prior to the act of 1848, chapter 200, entitled " An act for the more effectual protection of the property of married women." The first section of that act relates to marriages thereafter to be contracted; and although the second section operates on the property of females already married, still

Van Allen v. Humphrey.

if it is constitutional, as not interfering with the rights of the husband already acquired, it confers no power on the wife to sell and dispose of her estate, as does the third section, as amended by the law of 1849, (*ch.* 375, *Sess. Laws of* 1849, *p.* 528,) unless ownership confers that power. The ante-nuptial contract gave her full power to contract and dispose of the land, the same as a feme sole could do. But could she make a binding covenant to convey at a future day, so as to form a consideration for the defendants' covenant? I think she could. It is not necessary to decide that an action would lie against her on such a covenant, for its breach, in a court of law; but would a court of equity force her to convey, provided she had title to the lands?

In equity, an agreement to convey lands vests the fee in the vendee; or rather makes the vendor a trustee of the title for the vendee, and the vendee a trustee of the money, for the vendor. (*Story's Equity,* §§ 789 *to* 792, 1212. 2 *Wheat.* 577. 10 *Pet.* 532.) The defendants were therefore, in equity, the owners of the land, by virtue of this contract, and they took the actual possession, and have retained it ever since. If at the expiration of the contract, Mrs. Emmons fails to procure a deed conveying the title, the court will decree a specific performance, if she has the title then, or if she has it not, will award the damages the defendants may sustain. But in this case the parties have provided for that event by making all payments apply on a bond and mortgage which will not fall due to Mrs. Emmons until the time comes for her fulfilling this contract. That the title to the land is now out of Mrs. Emmons is in no sense a failure of consideration for the defendants' covenant. She did not covenant that there was no lien on the land, nor did she covenant that she would continue the fee in herself. She only covenanted to execute and deliver, or cause to be executed and delivered, a good and sufficient deed for the lands. If she procures the title to be conveyed to the defendants by the time specified, it is sufficient. The payment of the money now sought to be recovered is an independent covenant, and precedes her execution of the deed. Neither at law nor in equity is there a failure of consideration for this covenant. There is no allegation, or pretense, that Mrs.

Emmons will be unable to procure a good title, by the time stip-ulated, or that she is insolvent. If that was the case, it would have been competent for the defendants to redeem the mortgage on this land, and recoupe, when called upon to pay the purchase money.

But there is no doubt that the wife's agreement to convey this land, made in pursuance of the ante-nuptial contract, is so far binding that an action could now be sustained against her in this court, for damages in case of breach, to the extent of her separate property at least. It was held in *Wotton* v. *Hill*, (2 *Saund.* 177,) that if baron and feme grant land belonging to the wife, by fine with covenant of warranty, and the grantee be evicted by paramount title, covenant lies after the husband's death, against the wife upon the warranty. But this case is repudiated in the courts of this state. In equity, if a wife has a separate estate, it is made liable, on her bonds, notes, and other obligations, and even for her undertakings as surety for the husband's debts. (*Story's Equity*, § 1400, *and notes.*) And the fact that she gives a written obligation for the debt, has been held sufficient evidence of her intent to charge her separate estate. (*Id.* § 1401, *and note. Vanderheyden* v. *Mallory*, 1 *Comst.* 452.)

From the above positions, it results that the wife's covenant binds her estate, so as to give the defendants a remedy by specific performance of the agreement, or for damages for its breach, as an equitable charge on her separate estate, and also a specific appropriation of the debt due from the defendants to her, on the other mortgage, to satisfy any money advanced by them on this contract, in case she does not perform. There is, therefore, in no sense the least want or failure of consideration for the defendants' covenants. By its present organization, this court possesses full law and equity powers, and so long as there is an equitable consideration for a contract the court should grant relief. But here, there is a legal as well as an equitable one. I am of opinion judgment should be allowed to be entered on the verdict.

The power given to the wife, by ante-nuptial agreement, to

Van Allen v. Humphrey.

dispose of her property and to make contracts affecting it, depends upon the express assent of the husband, contained in the agreement; but the statute of 1848 and 1849, vests the power in her, to take, hold, and dispose of real and personal property, as an absolute, and not a derivative power. She acts, as the principal, and not as the agent of her husband. But this act does not preclude, or in anywise affect, ante-nuptial contracts, which are expressly affirmed, by the third section of the law of 1849. In order to carry out the spirit of this statute, it will become necessary for the courts to adopt, to its full extent, the equity rule, that a wife having a separate estate shall be taken to have bound it to the payment of debts contracted by her, and to allow actions to be sustained to charge such property. Indeed the third section of the act would seem to contemplate that consequence, for it enacts that "any married female may take by inheritance, or by gift, grant, devise or bequest, from any person other than her husband, and hold, to her sole and separate use, and convey and devise, real and personal property, or any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with the like effect, as if she were unmarried, and the same shall not be subject to the disposal of the husband, nor liable for his debts."

But as this case is disposed of on principles independent of, and existing anterior to the above statute, it is unnecessary to allude to it.

Judgment for the plaintiff.

[OTSEGO GENERAL TERM, July 12, 1853. *Crippen, Shankland* and *Gray*, Justices.]