ELISHA S. BALDWIN, Respondent, *v.* WILLIAM HUMPHREY, PETER N. BERRY and SUSAN his wife, JAMES C. EMANS and ADELIA his wife, WILLIAM E. HAXTON and SARAH his wife, Appellants.

Where five persons, acting as a committee to build sheds for the convenience of certain persons (themselves included) in the habit of attending a church, have received a conveyance of the premises on which it is proposed to build and subsequently entered into a written agreement with others, by which they are empowered, as such committee, to make the erections at the joint expense of all the subscribers, each subscriber to pay an equal share of the expense of the improvement "upon completion thereof and the delivery of a proper title for each respective share thereof," the title is so far impressed with a trust in favor of the subscribers that partition between the grantees, the result of which would be to defeat the entire scheme, will not be allowed.

Under these circumstances, the grantees are no longer tenants in common in such a sense that either can compel a partition. They are all under a valid contract to convey, and, as the other parties are not in default, have become trustees of the legal title. A judgment of partition not only permits the plaintiff, but compels the defendants, to commit a breach of trust, and should not be upheld.

Where, further, the grantees have substantially completed the improvements, and, at a meeting which the plaintiff was requested to attend, allotted nearly all of the sheds to subscribers, who have taken possession, and the plaintiff has then, a day or two before suit, proposed "to withdraw from the committee and have nothing more to do with it if the defendants would pay him what he had expended on the premises," at the same time presenting an account of his expenditures, the amount of which is paid to him and received without objection, the day after suit commenced, and is retained by him.—*Held*, that the plaintiff becomes a naked trustee, without any interest in the premises, unless as one of the subscribers to the agreement, and will not be permitted to maintain partition.

If one party to a contract agrees to pay the expense of a specified improvement, "agree" is to be deemed the word of both and implies an undertaking by the other party to make the improvement.

(Argued May 5th; decided September 13th, 1871.)

APPEAL from an order of the Supreme Court, at General Term, in the second district, affirming a judgment in favor of the plaintiff, for a partition of land.

The complaint is in the usual form for the partition of lands, and claims that the plaintiff, and the defendants, Humphrey, Berry, Emans and Haxtun, hold and are in possession of a small tract of land, in the town of East Fishkill, Dutchess county, therein particularly described, as tenants in common, each of an equal, undivided fifth, subject to the dower rights of the wives of Berry, Emans and Haxtun, who are also parties defendant. The answer denies that the plaintiff has any title, whatever, in the premises.

As an affirmative defence, it is alleged that an agreement was entered into, on or about May 20th, 1864, by the plaintiff and the defendants, and thirteen other persons, whose names are subscribed thereto, of which the following is a copy, to wit :

" Whereas, a committee of five persons, appointed for the purpose, consisting of Elisha S. Baldwin, William Humphrey, Peter N. Perry, James C. Emans and William E. Haxtun, have purchased of the consistory of the Hopewell Church, a portion of the horse shed belonging to said church, and have also purchased of Charles Stockholm, a lot of ground north of and adjoining said shed, for the purpose of removing and erecting thereon said shed, and building an addition thereto, if such addition may be required. Now, therefore, we, the subscribers, whose names are hereto annexed, do each and severally hereby authorize said committee, at our expense, to employ competent workmen to grade said lot, to remove and erect said shed, thereon, and also such addition to the same as may be required. And we, the said subscribers, do also agree to pay to said committee our proportionate and equal share of the expenses incurred by them, in the purchase of the sheds and lot, and in grading said grounds, removing and building sheds, together with all necessary expenses attending the same, upon the completion thereof, and the delivery of a proper title for each respective share thereof." (Signed) Elisha S. Baldwin and seventeen others, including the defendants. That the premises in question were conveyed to the plaintiff and defendants by Charles

Stockholm on or about July 8, 1864, as trustees, to carry out the purposes of the said agreement. That the deed was made absolute by omission and mistake. That the plaintiff acted with the defendants as a committee, and the sheds were removed, and erected on said premises, and each of them expended money about it till October 20, 1864, when the plaintiff refused to act further in the trust ; that on or about November 20, 1864, the defendants paid to the plaintiff $335, which he accepted in full of his interest in the premises. That the defendants have expended $950 in removing and erecting sheds and improving the said premises, in execution of the said trust, for which they claim that provision should be made in case partition be adjudged. The defendants demanded judgment to carry into effect the trust and agreement set forth.

The plaintiff put in a reply to the allegations of new matter, putting them at issue.

The action was tried in Dutchess county, before a justice of the Supreme Court, without a jury. The counsel for the defendants objected that the court could not try the action, and moved to dismiss it, or that proceedings be stayed until the plaintiff should establish his title by an action of ejectment, on the ground that the pleadings showed a dispute as to the title. The court denied the motion, and the counsel for the defendants excepted.

The court found, as facts, that Charles Stockholm, being the owner in fee, conveyed the premises mentioned in the complaint to the plaintiff and defendants, by deed in fee, on the 7th of July, 1864.

That the instrument in writing set forth in the answer was executed about the 1st of June, 1864, as alleged.

That the parties plaintiff and defendant, subsequent to July 7, 1864, made permanent improvements on the premises by the erection of sheds and grading the grounds, and that previous to the commencement of the action, and subsequent to the erection of fifteen sheds, the plaintiff proposed to withdraw from the committee, if the defendants would pay him

what money he had expended on the premises, which he then stated to be $335. That, subsequently, on the 20th of November, 1864, and after the commencement of this action, one of the defendants paid him that sum, which he then received and still retains; and this sum has been allowed to the defendants, by the judgment herein, as a lien on the premises prior to the claim of the plaintiff.

That on the 20th of November, 1864, the defendants, Humphrey, Berry, Emans and Haxtun, handed back to Charles Stockholm the deed from him, of the 7th July, 1864, and Stockholm then executed another deed of the same premises to the defendants Humphrey, Berry, Emans and Haxtun, in the absence of the plaintiff and without his knowledge.

That nineteen sheds or stalls have been erected on the premises since July, 7th, 1864, of which fifteen were completed before the commencement of this action. That a meeting of the persons who signed the instrument set forth in the answer was called previous to the commencement of this action, at which about one-half of the signers attended, at which the plaintiff was invited to be present, but did not attend. That the said nineteen sheds or stalls were allotted to and among the several persons who signed the writing, except the plaintiff, and two stalls occupied by the church, and the several persons to whom they were so allotted have since had them in possession, but no conveyances of the sheds have been given.

That an actual partition cannot be made without material injury to the interests of the parties.

The justice found, as conclusions of law, that the plaintiff, and the defendants Humphrey, Berry, Emans and Haxtun, were seized of the premises in fee simple, as tenants in common, each being entitled to an undivided fifth thereof. That the premises be sold, and the proceeds divided among the parties according to their respective interests, with costs to the plaintiff. A reference was ordered to take and state the accounts of the parties relating to the premises, and that the

entry of judgment be stayed till the coming in of the report, &c. The referee reported that Haxtun had paid out $549.90, Berry $207.88, Humphrey $83, and Emans $209.71.

Judgment confirming the report and for partition sale of the premises; for the payment of the above amounts; and for a division of the surplus according to the decision of the justice, and for the delivery of possession to the purchaser, was made at Special Term, May 8th, 1865.

The defendants duly excepted to the conclusions of the justice. An appeal was afterwards heard at the General Term, where the judgment was affirmed. The defendants thereupon appealed to the Court of Appeals.

*John H. Reynolds,* for the appellants, to the points discussed in the opinion, cited *Voorhees* v. *Presbyterian Church of Amsterdam* (8 Barb., 135); S. C., 17, id 103; *Sweet* v. *Jacock* (6 Paige, 335); *Lees* v. *Nutall* (2 Myl. & K., 819); *Van Epps* v. *Van Epps* (9 Paige, 241); *Torry* v. *Bank of Orleans* (id., 649); *Brewster* v. *Power* (10 Paige, 567); 4 Kent's Com., 305–6.

*Homer A. Nelson,* for the respondent, cited *People* v. *Bostwick* (5 Tiffany, 447); *Larkin* v. *Mann* (2 Paige, 27); 3 Paige, 245; *Cox* v. *Smith* (4 John. Ch., 271); *Phelps* v. *Green* (3 id., 302); *Jenkins* v. *Van Schaack* (3 Paige, 245); Code §§ 140, 142, 143.

EARL, C. By the deeds of May 27th and July 7th, 1864, the legal title to the land in question became vested in the parties to this action.

They purchased the land as a committee, representing and acting for all the parties who subscribed the paper introduced in evidence, and marked "E." It cannot be doubted that the parties to the paper agreed that the land should be purchased and the improvements made thereon, at their joint expense, and that each should have an equal share in the land and sheds to be erected thereon. All the terms of this agreement

distinctly appear in the paper, in express terms, or are to be implied from what does appear. It must be assumed that the parties to the paper were interested in the Hopewell Church, and the agreement contemplated the purchase of the lot and of the sheds, and the grading of the lot and the erection thereon of the sheds, for their mutual benefit.

The intention and object of the parties would be entirely defeated, if the grantees in the deed could take the property and keep it. It would be a fraud upon the other parties to the paper.

It is claimed by the plaintiff that the grantees in the deed were not bound to make the improvements, and, upon their completion, to convey to each of the other parties their share, for the reason that the paper does not contain any such agreement on their part. It is true that it does not contain such an express agreement, and if they had not signed it, it is doubtless true that it would have been optional with them to perform, or not, on their part. But they have signed the paper, and hence are bound to perform all that which, it may be fairly implied from the terms or language used, they agreed to perform. It is a rule of construction, that whatever may be fairly implied from the terms or language of an instrument, is, in judgment of law, contained in it. (*Rogers* v. *Kneeland*, 10 Wend., 218.)

In *Barton* v. *McLean* (5 Hill, 256), the defendants and plaintiff entered into written articles whereby the defendants agreed to let the plaintiff have the privilege, for a specified period, of cleansing ore at their forge, and of using a certain amount of surplus water for that purpose, the plaintiff agreeing to erect machinery therefor and to furnish them with so much cleansed ore as might be wanted in stocking their forge at a price stated ; but the defendants did not in terms agree to take and pay for the ore. The plaintiff having performed on his part, sued the defendants for not taking the cleansed ore from him, and they defended, alleging that they had not agreed to take it. The court held that the agreement was mutually binding, and that the defendants could not legally

refuse to accept and pay for the ore contemplated by it. Although the defendants had not expressly promised to take and pay for the ore, it was held that such a promise was necessarily implied. In *Pordage* v. *Cole* (1 Saund., 319*h*), the marginal note is as follows: " If it be agreed between A and B that B shall pay A a sum of money for his lands, etc., on a particular day, these words amount to a covenant by A to convey the lands, for *agreed* is the word of both," etc. In *Com. Dig. tit. covenant* (A), it is laid down that "if it be said that it is agreed A shall pay 10*l* to B for his goods, this amounts to a covenant by B to deliver his goods, for *agreed* is the word of both." In *Richards* v. *Edick* (17 Barb., 263), there was a written contract for the sale of plaintiff's farm to the defendant, but it contained no express promise on the part of the defendant to take and pay for the farm. The written contract was signed by both parties, and contained this clause: " The aforesaid party of the first part *agrees* to sell his farm in Florence, etc., to the party of the second part for and in consideration of seventeen hundred dollars," etc.

Mr. Justice GRIDLEY, writing the opinion, says: " The word 'agreement' necessarily imports two parties, one to *sell* and one to *buy ;* and when Richards agrees to sell his farm to Edick for $1,700, etc., and Edick signs the agreement, there is a promise to purchase and pay for the farm, upon the consideration expressed, as clearly implied as though it were expressed in words. It was not merely a *promise* made by one party to the other, but it was an *agreement* made by both, and binding on both by every principle of law and morality applicable to the construction of contracts."

In paper " E," signed by all the parties, the word *agree* is used, and, as has been seen, that implies an agreement by both or all the parties signing the agreement. The five parties to this action were to go on and make the improvements, and when they had completed them and tendered deeds to the other parties, they were each to pay his equal share. Any other construction of the contract would do violence to the intention of the parties, as gathered from the language

used considered in connection with the situation of the parties and the surrounding circumstances. It could never have been their intention that the grantees in the deed could take the land and sheds, and erect the sheds on the land, and then have the option to convey or not.

How, then, did paper "E" change or modify the relation of these parties to the land? Did they still remain tenants in common in such a sense that either could compel a partition thereof? I think not. They were under a valid contract to convey the land. That contract was in force, as they had done nothing to put the other parties, who had taken possession and were "waiting for their titles," in default. They thus became trustees of the legal title, and they could be compelled to perform their trust. They could not convey the lands to other parties without a breach of their trust. An implied trust was thus impressed upon the land, which would follow it into the hands of any purchaser with notice of the trust. Their vendees were in equity the owners of the land, and it was devisable and descendible as their real estate.

The vendors held the legal title merely as security for the purchase-money and, upon their death, their interest in the contract would go to their personal representatives as personal estate, and the legal title would descend to their heirs to be held by them upon the same trust as a mere security for the payment of the purchase-money. (Story's Eq. Jur., §§ 789, 1212; Willard on Real Estate, 114; *Van Allen* v. *Humphrey,* 15 Barb., 555; *Lewis* v. *Smith,* 9 N. Y., 502; *Moore* v. *Burrows,* 34 Barb., 173; *Adams* v. *Green,* 34 Barb., 176.)

Under such circumstances, the parties did not hold such an estate in the land as would authorize a partition of the land among them. I can find no precedent or authority for it. A partition or sale of the land might, and probably would, defeat the entire purpose of the contract. It would be a breach of trust, and the judgment of the court below, not only permits the plaintiff to commit a breach of trust, but in effect compels the defendants to a breach of trust, while they honestly desire to

fulfil it.   Still further, the parties were all bound by the con-
tract.   The plaintiff alone could not put an end to it.   The
defendants had the right under the contract to go on and grade
the lot and erect the sheds upon it, and, when they had fin-
ished the improvements, they could compel the plaintiff to
unite with them in making the conveyances called for by the
written contract.   But here is a judgment which, upon the
application of the plaintiff, compels them to violate their con-
tract and incur liability to damages for its violation.   Can such
a judgment be upheld ?

I have so far considered this case without reference to
what was done under the contract.   The parties went on
under the contract, acting as a committee for all the persons
interested, and graded the lot and put most of the sheds
upon it.   Then the plaintiff said that he would have nothing
more to do with the matter, and would take no further action
and bear no further responsibility.   The defendants, as they
had a right to do, went on and completed the sheds, and by
agreement with the other persons interested, after asking the
plaintiff to unite with them, alloted the sheds one for each,
and all the persons took possession, each of the shed allotted to
him.   And this was all done before the suit was commenced,
except that four of the sheds were finished afterward.

Before the suit was commenced, the plaintiff proposed to
the defendants, if they would pay him what he had paid out,
that he would withdraw and have nothing more to do with the
matter of the real estate and the contract, and they accepted
this proposition.   Plaintiff immediately made out his bill in
writing and showed it to the defendants, amounting to $325,
for all his charges, and then, so far as appears in the case,
without any further proceedings on his part, he commenced
this suit.'   The day after it was commenced, the defendants
paid him the $325 and he kept and retained it.   As he
received this without objection or qualification and kept it,
it must be treated for all purposes as if paid before the suit
was commenced.   We have, then, this further aspect of the
case.   After the contract had been substantially completed,

except the conveyances, and the defendants and other parties interested were in possession, and the plaintiff had been fully paid for all his interest in the land, and while he held an undivided one-fifth part of the title as a mere naked trustee, without any interest whatever, except possibly one-eighteenth part in common with all the other persons who signed paper " E," he was permitted to maintain this action and obtain a judgment ordering a sale of the premises, entirely ignoring the rights of the defendants and the other persons under the contract, and thus breaking up and defeating the entire scheme which the parties had in view. It seems to me that such a judgment cannot be sustained either upon ethical, legal or equitable grounds.

There should be a new trial, and upon such new trial the complaint should either be dismissed or the other persons interested should be made parties, under section 122 of the Code, that partition and conveyances may be made according to the contract between the parties.

Judgments reversed and new trial granted, the costs on the appeals to the Supreme Court and this court to be left to the determination of the Supreme Court upon the final hearing of the cause therein.

For reversal, EARL, HUNT and GRAY, CC.; for affirmance, LEONARD, C.; LOTT, Ch. C., not sitting.

Judgment reversed and a new trial ordered, with costs of appeal to the Supreme Court and Court of Appeals to the defendants.