ALFRED H. JUGLA *et al.,* Respondents, *v.* AMEDEE TROUTTET, Appellant.

*Court of Appeals, March* 18, 1890.

1. *Contract. Breach.*—Where the terms of a contract fairly import that, so long as defendant should continue the business, the plaintiff should sell to him, and he should purchase of plaintiff, gloves for his trade, provided the latter should continue to manufacture them, a discontinuance to manufacture is not a breach of the contract.
2. *Account stated. Statement.*—Where plaintiff renders to defendant a statement of dealings between them, with a request to examine it and advise him on the subject, and defendant makes no objection to the account, it thereby becomes stated by and between the parties.
3. *Same. Effect.*—The effect of an account stated is not impaired by the fact that the sum found due to the party presenting the account is not presently payable, but is due in installments, where the account includes the current dealings between the parties which are to go into the same account for the purpose of ascertaining the amount remaining unpaid.
4. *Same.*—In such case, it may be defeated by the non-performance of something essential, on the part of plaintiff, to perfect his right to payment.

Appeal from judgment of the general term of the court of common pleas of the city of New York, affirming judgment entered upon report of referee in favor of the plaintiffs.

On June 22, 1881, an agreement under seal was entered into by the parties, and after reciting that the plaintiffs had succeeded to the business of manufacturing gloves at Paris, and selling them at New York, before then carried on by D. Jugla, and that the defendant had acted as agent for him and them in the city of New York, and was desirous of purchasing such business in that city, the agreement proceeded to the effect that the plaintiffs thereby sold to the defendant the entire stock in trade of the business in the city of New York contained in a store referred to, and the good will of the business, for which the defendant agreed to pay one hundred and seventy-six thousand nine hundred and thirty-eight francs and ninety centimes, payable at the rate of ten thousand francs per month, beginning September 30, 1881, and to bear interest at the rate of five per cent. The plaintiffs agreed to sell to the defendant gloves manufactured by them upon terms as favorable as to any other purchaser from them. And so long as the defendant should continue the business so purchased by him the plaintiffs would not sell to any person other than the defendant in the United States any gloves manufactured by them, nor would they establish any agency there for the sale of such gloves. And the defendant agreed that he would not purchase gloves of the same grade of any other person so long as the plaintiffs should continue to manufacture such gloves and to furnish them to him pursuant to the agreement. The defendant was authorized to use the name of D. Jugla in the business, and to sign such name to or indorse it upon any receipts, post-office orders, drafts or checks. And the plaintiffs agreed to purchase upon commission, in Paris, and ship to the defendant upon his order such fancy goods as he might desire.

In July, 1882, the plaintiffs discontinued the manufacture of gloves, except to fill some orders on hand, and entirely ceased manufacturing them in August following. For that reason the defendant, after August 1st, was unable to obtain any gloves of the plaintiffs.

On June 30, 1882, they sent to the defendant a statement as of June 5th of the account between them, embracing in it the amount unpaid upon the agreement, which showed a balance in their favor against him of ninety-seven thousand six hundred and fifty-nine francs and seventy centimes, and by an accompanying letter requested him to examine it, and let them know whether it agreed with his books. This statement was received by the defendant. They afterwards had some further transactions arising from the purchase by the plaintiffs and shipment to him of fancy goods. The referee directed judgment against the defendant for $22,047.67, with costs.

*David Wilcox*, for appellant.

*Coudert Brothers* and *Paul Fuller*, for respondent.

BRADLEY, J.—This action is founded upon an alleged account stated, which it is claimed was produced by the defendant's adoption of or acquiescence in a statement of the dealings between the parties, made by the plaintiffs as of the 5th day of June, 1882, and sent to the defendant on the thirtieth of that month, with a letter requesting him to examine it and advise them on the subject. In July following, after receiving such statement, the defendant went to Paris, there saw the plaintiffs, and informed them that he had not examined it, but would do so on his return to New York, and let them know if there were any mistakes in it.

He did return to New York in September, and afterwards made to the plaintiffs no objection to the account, and the referee found that he acquiesced in its correctness, and that thereupon the account became stated, by and between the parties, up to and as of June 5, 1882. It is contended by the defendant's counsel that the action upon account stated is not supported because the amount which produced the balance represented by the statement was not then due from the defendant to the plaintiffs; and that whether the plaintiffs should

finally be entitled to it was dependent upon the performance by them of the covenants in the agreement.    The time for the payment of the entire purchase money, at the rate of ten thousand francs per month, as provided by the contract, would not then expire until March 30, 1883.    And at the time the statement of account was rendered, the defendant was not in default.    It embraced all the dealings between the parties from the time of making the agreement of June 22, 1881, in the form of an account both debit and credit, including the amount unpaid of the purchase money mentioned in such agreement.    If the fact that the balance as represented by the account rendered was not then payable denied to the statement the character of an account stated, the cause of action as alleged was not established by the evidence.    And in that view, the further inquiry may arise whether that question was, by any exception, made available to the defendant on this review.  There may have been an effectual adoption, by acquiescence, of the amount of the balance at a specified time in a statement embracing the unpaid purchase money; and if nothing intervened or was essential on the part of the plaintiffs to perfect their right to payment when it became payable, no reason appears why it may not have been treated as an account stated.    It appears that the understanding between the parties was that certain moneys in the plaintiffs' hands should, from time to time, be applied upon the installments as they became due upon the contract; and that any amount of remittances by the defendant to them in excess of that requisite to pay for goods shipped by them to him should be credited on account of money due upon the contract.

It thus appears that the purchase money mentioned in it and the current dealings between the parties were to go into the same account for the purpose of ascertaining what amount remained unpaid.    The statement does embrace all these dealings, and is distinguishable from one of a mere statement of the amount of unpaid installments not due upon

an executory contract. This balance as upon an account stated has relation only to the time up to which it was made and rendered, and is subject to correction for any mistake which entered into its production. Lockwood *v.* Thorne, 18 N. Y. 285 ; Young *v.* Hill, 67 Id. 162 ; Samson *v.* Freedman, 102 Id. 699.

If, when the contract was introduced in evidence, the performance subsequently to the time of the rendition of the account of any covenant on the part of the plaintiffs was required to support their claim to recover, they had the burden of proving such performance. The defendant does not, in his answer, allege any breach of the contract, but does charge that he was induced to make the purchase of the New York stock of goods and take the business upon the belief, which the plaintiffs fraudulently induced him to entertain, that they would continue to manufacture and furnish him gloves for a course of years, but, in fact, they then intended not to continue to so manufacture gloves and supply him with them, and concealed such purpose from him. The issue of fraud was found against the defendant, and such finding of the referee had the support of evidence. It is, however, argued by the defendant's counsel that the plaintiffs undertook by the contract to continue to manufacture gloves and furnish him with them for his trade ; and that when they ceased and refused to do so they were chargeable with a breach of the contract. They did not, in express terms undertake to sell him gloves for any specified time, but they did agree to sell to him gloves manufactured by them upon terms equally as favorable as they sold them to any other party; and that so long as the defendant should continue in the business in the city of New York, they would sell to no other person in the United States. While it is very likely that the defendant made the purchase and assumed the business with a view to and in expectation of receiving from the plaintiffs for many years the " D. Jugla" gloves for his trade, the provisions of the contract will not bear the construction requisite

to constitute an unqualified undertaking of the plaintiffs to continue the supply to him for any definite time, or for such time as the defendant should continue in the business. They do agree to sell him gloves manufactured by them, and not to sell to others who may come in competition with him.

The defendant agrees "that so long as" the plaintiffs "continue to manufacture said gloves and to furnish the same to him," etc., he "will not purchase of any other person any gloves whatever of the same grades." It is not essential to mutuality of covenant that the provisions of the contract so expressly declare. A covenant of one party to sell or purchase might imply a corresponding covenant of the other party to the contract to purchase or sell. Barton v. McLean, 5 Hill, 256 ; Baldwin v. Humphrey, 44 N. Y. 609 ; Butler v. Thomson, 92 U. S. 412. And when any act of the parties, or either of them, is essential to carry out the intention of the parties, appearing by the provisions of a contract, the stipulation for the performance of such act will be deemed within its provisions as effectual as if actually expressed. Jones v. Kent, 10 N. Y. 585 ; Booth v. Cleveland Mill Co., 74 Id. 15.

The terms of the agreement fairly import the intent of the parties, which is deemed within its covenants, that so long as the defendant should continue the business so purchased by him of the plaintiffs, the latter should sell to him and he should purchase of them gloves for his trade, provided the plaintiffs continued to manufacture gloves. This qualification quite clearly appears by the provisions of the contract, and there is no opportunity to spell out or imply a covenant on the part of the plaintiffs to continue in the business of manufacturing, or which denied to them the right at their pleasure to discontinue the production of gloves. It may'have been assumed by the parties that the making of gloves and the sale to and purchase by the defendant, would be continued as long as the latter desired to carry on, in New York, the business so purchased by him ; and that such expecta-

tion on his part was a leading inducement to him to make the purchase. It is in that view that the defendant's counsel urges that the intent to accomplish such purpose should be treated as within the covenants, and that any other view would render the contract unreasonable and place him at the mercy of the plaintiffs.

Reference is made to Russell *v.* Allerton, 108 N. Y. 288 ; in support of such contention. There the rule was well stated, to the effect that when there was doubt or uncertainty as to the meaning of language employed, the court, for the purpose of construction, would seek for the intent of the parties, and would not give to it such interpretation as would make the contract unreasonable and place one of the parties entirely at the mercy of the other. And the canon of construction in the other cases cited, that when from the language used there is manifested a clear intention that the parties will do certain acts, a covenant in a contract will be inferred to accomplish it. Booth *v.* Cleveland Mill Co., 74 N. Y. 15 ; Coleman *v.* Beach, 97 Id. 545 ; Mansfield *v.* N. Y. C. & H. R. R. R. Co., 102 Id. 205.

In the present case the contract appears to have been carefully prepared, provisions are without doubtful import, and although the defendant took by his purchase the goodwill of the business, one essential element of which may have been the reputation of the " D. Jugla " gloves, the undertaking of the plaintiffs to furnish them to the defendant was plainly made dependent upon their continuance to manufacture them, and such was manifestly the qualification of their covenant in that respect. A contrary implication could not be given to the contract consistently with its terms. These views lead to the conclusion that there was no breach of the contract on the part of the plaintiffs, and, therefore, no condition precedent on their part was unperformed to defeat the effect, as an account stated, of the statement before mentioned acquiescently adopted by the defendant. In fact there is substantially no dispute about the amount due the

plaintiffs upon the assumption that there was neither fraud or breach of contract on their part.

And it may be added that there was no motion to dismiss the complaint, nor was there any question distinctly raised by exception as to the pleadings. It is, therefore, not important whether the action should have been upon the contract rather than solely upon the alleged account stated, inasmuch as no question of pleading in view of the evidence was raised, and as the facts proved warranted recovery of the amount for which the judgment was directed. None of the exceptions seem to have been well taken.

The judgment should be affirmed.

All concur.

---

## NOTE ON "ACCOUNT STATED."

An account stated is an admission made by one party to another that the accounts between them, consisting of the various items which enter into that account, are as there stated. Kingsley *v.* Melcher, 56 Hun, 547. From the necessities of the law merchant, it has become a part of the law that after a lapse of time such an account and such an admission shall be conclusive between the parties, unless impeached because of fraud or mistake in reference to some of the items contained in the account. Id. And by the statute of limitations, such an admission becomes absolute between the parties after the lapse of ten years unless tainted by fraud, and even then it becomes conclusive unless attacked within a certain period after the discovery of the fraud. Id.

It is a well established principle that an account stated becomes stated as to all matters properly included in it. Id. It becomes a stated admission in writing to the effect that the account correctly states all the items of account between the parties, and hence it is not only stated as to the balance, but stated as to the items. Id.

When an account becomes so stated that it cannot be impeached upon any other ground than that of fraud, it then attains the same dignity as a judicial decree in respect to that account. Id.

It is true that an account stated is *prima facie* evidence, and will be deemed conclusive between the parties unless some fraud, mistake, omission or inaccuracy is shown. Frankel *v.* Wathen, 58 Hun, 543. But the converse of the rule is equally well established, namely, that if fraud be