LOUIS SCHOELLKOPF et al., Respondents, *v.* ALBERT T. COATS-
WORTH et al., Appellants.

1. LANDLORD AND TENANT — LIABILITY OF LANDLORD TO PAY FOR
BUILDINGS ERECTED BY TENANT. Tenants, who have succeeded to the
rights of the original lessee of property and are dispossessed pursuant to
the terms of the lease by parties who have succeeded to the rights of the
original lessors, are entitled to maintain an action against them to recover
the value of buildings and improvements erected upon the premises under
a provision in the lease, provided such action might have been maintained
thereunder against the original lessors, especially where by demurring to
the complaint therein the defendants have admitted its allegations as to
plaintiffs' title and ownership of the right, title, claims, demands and
covenants in favor of the lessee under such lease.

2. WHEN LIABILITY ATTACHES. Under a lease providing that upon
notice given six months before the expiration of the term of fifteen years
the lessor may take possession of the premises and will pay for the build-
ings and improvements erected thereon by the lessee, and that failure to
give such notice shall be deemed a renewal of the lease for five years
upon the same terms and conditions, the right of the lessee to payment
for the buildings erected thereon by him is not dependent upon a termi-
nation of the lease at the expiration of the term of fifteen years, but the
lessor is liable for the value of such buildings and improvements when-
ever he terminates the lease by the requisite notice at the expiration of
any subsequent term of five years.

*Schoellkopf* v. *Coatsworth,* 55 App. Div. 331, affirmed.

(Argued January 8, 1901; decided February 26, 1901.)

APPEAL, by permission, from a judgment, entered Novem-
ber 30, 1900, upon an order of the Appellate Division of the
Supreme Court in the fourth judicial department, which
reversed an interlocutory judgment sustaining a demurrer to
the complaint and overruled such demurrer.

The following question was certified: " Does the amended
complaint herein state a cause of action ? "

The nature of the action and the facts, so far as material,
are stated in the opinion.

*John Cunneen* for appellants. The complaint does not
state a cause of action; the covenant relied on to pay for the

buildings was satisfied by the first renewal. (*Kutter* v. *Smith*, 2 Wall. 500; *Mayor, etc.,* v. *H. F. Ins. Co.,* 10 Bosw. 537; *Mayor, etc.,* v. *B. Fire Ins. Co.,* 41 Barb. 231; *H. & N. Y. S. Co.* v. *Mayor, etc.,* 78 N. Y. 1; *Smith* v. *Cooley,* 5 Daly, 401; *Bruce* v. *F. Nat. Bank,* 79 N. Y. 154; *Witty* v. *Matthews,* 52 N. Y. 512.) Even if the agreement to pay for the improvement was not extinguished by the renewals the complaint states no cause of action at law. There is no allegation, in substance or in effect, that the defendants ever became indebted to the plaintiffs or covenanted, or promised, or assumed or agreed, to pay for the value of the buildings. (*Tallman* v. *Coffin,* 4 N. Y. 134; *Bream & Co.* v. *Dickerson,* 2 Humph. 126; *Graber* v. *Duncan,* 79 Ind. 566; *Divan* v. *Loomis,* 68 Wis. 150; *Dickey* v. *Ry. Co.,* 122 Mo. 223; *W. F. Co.* v. *O. & M. Ry. Co.,* 94 Ill. 83; *Chamberlain* v. *Dunlop,* 126 N. Y. 45; *Curtiss* v. *White,* Clarke's Ch. 389; *Cole* v. *Hughes,* 54 N. Y. 444; *Scott* v. *McMillan,* 76 N. Y. 141.) The claim of the plaintiffs and the ruling of the court below that the lease was a continuous one for fifty years, is untenable. (*Norton* v. *Snyder,* 2 Hun, 82; *Carr* v. *Ellison,* 20 Wend. 177; *Rutgers* v. *Hunter,* 6 Johns. Ch. 215; *Willis* v. *Astor,* 4 Edw. Ch. 617; *Leary* v. *Hutton,* 35 N. Y. S. R. 774; *Banker* v. *Braker,* 9 Abb. [N. C.] 411; *Syms* v. *Mayor, etc.,* 105 N. Y. 153; *Austin* v. *Stevens,* 38 Hun, 41; *Muhlenbrinck* v. *Pooler,* 40 Hun, 526; *Leary* v. *Hutton,* 35 N. Y. S. R. 773.)

*Charles M. Harrington* for respondents. The lease in question was a continuous one, living on until notice was actually served terminating same; the term thereof was indefinite and the same did not terminate until April 1, 1897. The lease was not a new lease made every five years after the first fifteen years expired. (*Matter of Coatsworth,* 37 App. Div. 305; 160 N. Y. 118; *Greason* v. *Keteltas,* 17 N. Y. 491; *Helier* v. *Casbert,* Lev. 127; *Sackville* v. *Evans,* Freem. 171; *Howard* v. *Heinerschit,* 16 Hun, 177; *Matter of Otis,* 34 Hun, 542; *Thompson* v. *Rose,* 8 Cow. 266; *Tallman* v.

*Coffin,* 4 N. Y. 134; *Coffin* v. *Talman,* 8 N. Y. 465; *Wray* v. *Rhinelander,* 52 Barb. 553.) The continuation of the lease after April 1, 1862, did not operate as a discharge of the covenant to pay for the buildings, vaults and sidewalks. (*French* v. *Carhart,* 1 N. Y. 96; *Chicago* v. *Sheldon,* 9 Wall. 50, 54; *Topliff* v. *Topliff,* 122 U. S. 131; *Tallman* v. *Coffin,* 4 N. Y. 134; *Coffin* v. *Talman,* 8 N. Y. 465; *Thompson* v. *Rose,* 8 Cow. 266; *Price* v. *Palmer,* 23 Hun, 504; *King* v. *Thompson,* 9 Pet. [U. S.] 204; *Gibert* v. *Peteler,* 38 N. Y. 165; *Walton* v. *Meeks,* 120 N. Y. 79.)

Martin, J. The purpose of this action is to recover the value of certain buildings and improvements erected upon premises now owned by the defendants. The agreements upon which the plaintiffs base their right of action are contained in a lease made by and between the defendants' predecessors in title and one Thomas J. Dudley, to whose rights the plaintiffs have succeeded.

The contention of the appellants that the plaintiffs, as successors to the rights of the original lessee, are not entitled to maintain this action against the defendants who have acquired the title of the original lessors, cannot be maintained. In *Matter of Coatsworth,* the defendants in this case evicted the plaintiffs from the premises on which the buildings and improvements were erected, upon the ground that under the lease in question the defendants, as successors to the lessors, had by a notice given in pursuance of such lease terminated it as to the plaintiffs who were their tenants by reason of having succeeded to the rights of the original lessee, and having attorned to them as such. Thus, the appellants not only recognized the rights of the plaintiffs as tenants under the lease, but based their own rights upon the provisions of that instrument. In that case the trial court granted the defendants the possession of the premises upon the express condition that the decision made should not prejudice the rights of the plaintiffs to recover for the buildings, vaults and sidewalks erected by them or their grantors. That case finally reached

this court, where it was said : " Upon reference to the notice it will be seen that the owners elect to take possession of the premises pursuant to the provisions of the said lease, so that if under the provisions of the lease they are required to pay for the buildings, they take possession under the promise to pay therefor." (*Matter of Coatsworth*, 160 N. Y. 114, 121.)

We still are of the opinion that having elected to take possession of the premises pursuant to the provisions of the agreement between the original parties, the defendants are required to pay for the buildings, if under that agreement their grantors would have been liable. Besides the contention of the appellants that the plaintiffs cannot maintain this action upon the agreements in the lease cannot be sustained in view of the allegations of the complaint as to their title and ownership of the rights, title, claims, demands and covenants in favor of the lessee under such lease which are admitted by the demurrer.

The only other question that need be considered is whether under the agreements contained in the original lease the plaintiffs, as successors to the title of the lessee, may recover for the buildings erected upon the premises. On the 1st day of April, 1847, the defendants' grantor leased to the grantor of the plaintiffs certain premises in the city of Buffalo. By the terms of the lease the lessee was to have the use and possession of the premises for fifteen years, for an indefinite time thereafter and until it should be terminated by notice from the lessor. A termination of the period for which the lease was to run could be effected only by the lessor giving notice six months before the end of fifteen years from the commencement of the term, or by giving notice six months before the expiration of any term of five years thereafter to which it was extended or continued. During the first ten years the annual rent reserved varied from fifty dollars to five hundred and fifty dollars, and after that time it was seven hundred dollars a year. The lease contained an agreement by the lessee, within three years from the first day of April, 1847, to erect at his own proper cost and expense good substantial brick

buildings suitable for commercial and business purposes on all
the demised premises.    Then followed this provision : " And
the party of the first part covenants and agrees to and with
the party of the second part, his executors, administrators and
assigns, that at the expiration of the term above created, unless
they give the notice hereinafter provided for, for the purpose
of renewing and continuing this lease (upon said party of the
second part having kept and performed all these covenants
and agreements herein contained on his part), they will pay
the said party of the second part, his executors, administrators
and assigns, the value of the said buildings that may then be
standing upon said demised premises, with the vaults and side-
walks that shall have been constructed on said premises as the
said value shall then be, such value to be ascertained in a way
hereinafter provided."

After providing the manner in which the value should be
determined, this provision follows : " And the said parties of
the first part further covenant and agree to and with the
party of the second part, his executors, administrators and
assigns, that in case they do not give the party of the second
part, his executors, administrators and assigns, at least six
months' notice in writing before the first day of April,
1862, of their election to take possession of the demised
premises at the expiration of this lease and pay for said build-
ings, vaults and sidewalks at such appraised value, that then
and in that event they will renew and continue this present
demise and lease, and such omission to give said notice shall
be deemed and taken to be a renewal and continuance of this
demise and lease for five years from said first of April, 1862,
upon the same terms and conditions hereinbefore expressed,
except that the rent for said renewed and continued term shall
be seven hundred dollars per annum, payable in the same way
as the last five years' rent above provided for ; and they also
covenant and agree as aforesaid that so often as they shall fail
to give said six months' notice before the termination of such
renewed term, they will renew the said demise and lease, and
such failure shall be deemed a renewal thereof for five years

11

from the termination thereof on the same terms and conditions
as the first renewal and continuance."

It is to be observed that the first provision of the agree-
ment relating to payment for the buildings provides that the
lessors, at the expiration of the term created, unless they give
the notice hereinafter provided for, *for renewing and con-
tinuing* the lease, will pay the value of the buildings in the
manner stated. The notice there referred to is a notice which
is thereinafter provided for. When we pass to the following
provisions which provide for the notice we find that none was
to be given for the purpose of *renewing and continuing* the
lease. The only notice provided for was one to terminate
the lease, and unless such a notice was given the lease con-
tinued by virtue of its own provisions. Hence, the provision
as to a notice for renewing and continuing the lease is
obviously incorrect and at variance with all the other pro-
visons of the agreement. If this paragraph stood alone, it
would be difficult, if not impossible, to harmonize it with the
general purpose of the agreement. But we find in the next
paragraph a special provision as to what notice is required or
may be given, which is the only notice thereafter provided
for. That paragraph provides that, in case the lessors do not
give the lessees, their executors or assigns, at least six months'
notice of their election to take possession at the expiration of
the lease and pay for the buildings at their appraised value,
the omission shall be taken as a renewal and continuance of
the demise and lease for five years upon the same terms and
conditions, except as to the amount of rent. When we con-
sider the character of the required notice, we find that it was
to be a notice of the lessors' election to do two things: 1. To
take possession of the premises at the expiration of the term,
and, 2. To pay for the buildings, vaults and sidewalks at the
appraised value. If the lessors did not give that notice, then
the lease was continued for five years upon the same terms
and conditions. Immediately following is the provision that,
so often as the lessors shall fail to give *said six months'
notice* before the termination of the renewed term, it shall be

deemed a renewal for five years upon the same terms and conditions. Thus, in order to terminate the lease at the end of fifteen years, the notice of an election to take possession and to pay must be given by the lessors, and at the end of the renewed term and as often as they should fail to give said six months' notice, which is the notice we have already considered, the term continued by virtue of their agreement.

· From these provisions it becomes obvious that it was the intent of the parties that, whenever the lease was terminated by notice of election on the part of the lessors to take possession, they were also required to pay for the buildings and other improvements on the property. Plainly that was the condition at the end of the first fifteen years, and at the end of any subsequent term the lease could be terminated only by a notice and an election by the lessors to take possession and pay for the improvements thereon.

The lessors could not elect to terminate the lease without becoming liable to pay for the improvements, and, as we held in the *Matter of Coatsworth*, when the defendants elected to terminate the lease in pursuance of its provisions, such election included a promise to pay for the improvements. The decision in that case was and can be sustained only upon the theory that the election by the defendants to terminate the lease in pursuance of its terms and provisions included a promise upon their part to pay in accordance with the provisions of the agreement contained therein. These considerations lead us to the conclusion that the contention of the appellants, that the right of the lessee to recover for the buildings erected by him terminated at the expiration of fifteen years, cannot be upheld by any proper construction of the agreement. Manifestly, that was not the intent of the parties as shown by the agreement itself.

Moreover, the effect of the construction contended for by the appellants, that if the lessor permitted the lessee to remain in possession for the additional term of five years all his right to compensation for the buildings and structures erected by him was discharged and could not be enforced

upon a subsequent termination of the lease, is not only inconsistent with the obvious intent of the agreement but would be unreasonable, and such a construction ought not to prevail. It is a well-established canon of interpretation that in seeking for the intent of parties the fact that a construction contended for would make the contract unreasonable and place one of the parties at the mercy of the other may be properly taken into consideration. (*Gillet* v. *Bank of America*, 160 N. Y. 549, 557; *Russell* v. *Allerton*, 108 N. Y. 288; *Wright* v. *Reusens*, 133 N. Y. 298, 305; *Jugla* v. *Trouttet*, 120 N. Y. 21, 28.) If the appellants' contention is correct, when the term was extended for five years, it not only rendered the lessee liable to pay seven hundred dollars a year rent, but transferred to the lessors permanent improvements which had been erected upon the premises of the value of thirty thousand dollars. So that practically the rent for the term of five years would have been at least six thousand dollars a year in addition to the rent reserved by the agreement. It is also manifest that the understanding of the parties was not in consonance with the contention that the lessee was to be paid for the improvements erected only at the expiration of the fifteen years and if continued for five years longer the title to the buildings vested in the lessors. If it had been the understanding of the lessors that at the end of twenty years they became the absolute owners of the buildings, as well as the land, it would be folly to suppose that they would have permitted the original agreement to continue and have received a rent of only seven hundred dollars for the use of premises which had been increased in value $30,000 by the buildings erected, or to nearly three times the value of the land. The continuance of the lease at the rent of seven hundred dollars for the further period of thirty-five years clearly indicates a plain understanding upon their part that they were renting the land without the buildings, and that they were to pay for the latter at the final termination of the lease. Thus, by the acts of the parties, we have a practical construction of this agree-

ment, which is totally inconsistent with the contention of the appellants.

We think the learned Appellate Division properly decided this case, that the order and interlocutory judgment appealed from should be affirmed, with costs, and the question certified should be answered in the affirmative.

Parker, Ch. J., O'Brien, Bartlett, Haight, Vann and Landon, JJ., concur.

Ordered accordingly.