RUSSELL *et al. v.* ALLERTON.

(*Supreme Court, General Term, First Department.* January 24, 1890.)

1. SHIPPING—CHARTER-PARTY—ACTION FOR BREACH—DEFENSES.
   Where a person makes a contract to ship cattle on a vessel on or before a certain day, and, before the day arrives, sees that the vessel cannot be ready in time, and gives notice that he will not make the shipment, he cannot be held liable for breach of contract, if it is shown that the vessel could not have been, and was not in fact, ready to receive the cattle on the day specified.

2. SAME—EVIDENCE—STATEMENTS OF THIRD PERSONS.
   In an action for breach of such a contract, it is error to allow the agent of the owner of the vessel to testify that, after defendant gave notice that he would not ship, other persons proposed to make a shipment of cattle; that at the time of the interview with them he had reason to believe that the proposal was on behalf of defendant; and to give the statements made in such interviews,—such statements being by a third person, and not made in defendant's presence.

Appeal from circuit court, New York county.

Action by Charles F. Russell and Samuel Russell against Samuel W. Allerton to recover damages for breach of a contract of freight. From a judgment entered on a verdict for plaintiffs, and an order denying a motion for a new trial, defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Ira D. Warren,* for appellant. *James L. Bishop,* for respondents.

DANIELS, J. The action is now before the court for the third time. The result of its consideration on the first appeal appears by the report made of the case in 31 Hun, 307. Upon the second appeal, the judgment in favor of the defendant was affirmed, (38 Hun, 638, *mem.*;) but on appeal to the court of appeals that was reversed, and the case sent back for new trial. The opinion then delivered is reported in 108 N. Y. 288, 15 N. E. Rep. 391. Upon the last trial, other points were presented, upon the disposition of which it has been urged by the defendant that erroneous decisions were made by the court at the trial.

The charter-party upon which the action has been brought was made in July, 1878; and, by the contract which it created, the ship was to sail to Philadelphia, and commence lading on March 15, 1879, or not later than the 1st of April, and to continue to load and carry the cattle of the defendant up to the 15th of July, and, if she again arrived in port before the 31st of July, the defendant was still to furnish her with her load of cattle. In addition to the part of the steamer which was to be devoted to the lading and carrying of the cattle, the right was reserved to the plaintiffs to load her with grain or other cargo below what was called "between-decks," to any port of the United Kingdom, for the owners' benefit. She did not arrive at Philadelphia at the time mentioned in the charter; and she was not ready to take the defendant's cattle on the 1st of April, 1879. A contract was made on behalf of the plaintiffs to take a cargo of grain in that part of the ship in this manner reserved for their use, and it was proved upon the trial that it was necessary for the grain to be loaded in the vessel before the defendant accomplished the loading of the cattle. This was not done at the time mentioned in the charter for the arrival and lading of the ship with the cattle; and on the 7th of April, it is stated by the plaintiffs' agent, that an agreement was made with the defendant deferring the lading of the cattle on board the ship until the evening of the 9th of that month. After this agreement was stated to have been entered into, and on the same day, the plaintiffs' agent met the defendant, together with another person, in the city of Philadelphia, and was then informed by the defendant that he would not ship the cattle on the steamer; and the reasons assigned by him for his refusal were that the ship had not been ready to receive the cattle at the time mentioned in the charter, and would not be ready at the time included in the agreement for the extension. That would terminate, as the

proof tended to establish, its existence on the 9th of April,—two days after this interview took place; and the evidence in the case proves that the ship was not ready to receive the cattle at any time during the day or night of the 9th of April, and that the grain she was to take as an additional part of the cargo was not laden on board the ship until after the 9th of April had passed. There was evidence given on behalf of the plaintiffs tending to prove that they might have laden the grain on board so as to be ready to take the cattle on the evening of the 9th. But it left that part of the controversy in a state of such uncertainty as only to be capable of being decided and disposed of by the jury; and in this condition of the proof the court was asked to charge the jury that if the jury found that the plaintiffs were not, and could not be, ready to receive the cattle at the time finally agreed on, the verdict should be for the defendant; and the reply was: "No; I cannot charge that, because it may have been on the 9th." And to this the defendant excepted.

This proposition was fairly presented by the evidence in the case, for the proof did tend to establish the fact that the ship was not, and could not be, ready to receive the cattle within the time to which this contract was extended on the 7th of April; and if she could not have been ready, and was not, as the fact was proved, ready, to receive the cattle on the 9th, then the defendant was under no obligation to keep the cattle in readiness for shipment after the expiration of that time. The utmost point to which the performance of the agreement was by any view extended was the night of the 9th of April; and, if the ship could not be in a condition to receive the cattle at that time, the defendant was not bound to hold himself in readiness to place the cattle on board the ship, for that circumstance positively and absolutely rendered the plaintiffs unable to perform the agreement as they claim it to have been extended by the conversation which took place on the morning of the 7th; and if they could not have the ship in readiness to take the cattle on board on the 9th of April, then the plaintiffs were unable to perform the contract on their part, and the defendant was not obliged to hold himself in readiness to put the cattle on board the ship at any time after the night of that day. This proposition, therefore, being fairly presented by the evidence in the case, should have been submitted, as requested, by the court to the jury; and, if they were satisfied from the evidence that the ship was not, and could not be, in readiness to receive the cattle by the night of the 9th, then there was no obligation on the part of the defendant to keep his cattle longer than that time, or to hold himself in readiness to place the cattle on board the ship. On the contrary, this state of facts would absolve him entirely from all obligation to perform the agreement contained in the charter-party for the shipment of these cattle.

The same witness was asked, concerning an offer which he had testified to from another party to ship cattle on board the steamer on the 7th of April, whether he had, at the time of the interview with the persons who proposed to make the shipment, reason to believe that the offer made by them had been made on the part of the defendant; and, if so, to state his reasons for that belief. This was objected to on the part of the defendant as not calling for a statement of facts, but conclusions and conjectures, and declarations not made in the defendant's presence. The objections were overruled, and the defendant excepted. The witness then stated that he went to the office of Wright & Sons, and inquired for Messrs. Allerton & Sherman, and that he went in later, and asked to see one of the firm in reference to the grain, and was told that they would not put the grain on board unless the cattle were shipped; and he replied that the cattlemen, as far as he knew, expressed their willingness to ship, and some question was then raised about the grain and they said: "Well, we are not going to put the grain on board unless they are going to ship, and you had better be positive about that. We don't want our grain waiting there unless they are going to ship." This was said by F. L. Neal, one of the partners. And that after that, on the same day, they were offered

cattle by Wright & Son, but ostensibly on account of Nelson Morris, of Chicago. This evidence was not properly allowed to be introduced in, and made. a part of, the case. Its only effect could have been to prejudice the jury against the position taken in favor of the defendant. Besides, it consisted in mere statements of another person, which were not admissible for any purpose whatever in the case. The import of the inquiry was to obtain from the witness some statement or information derived by him in an interview with Wright & Sons, or some person connected with their business. Instead of the objections being overruled, as they were, they should have been sustained, and this evidence excluded; and for this, as well as the exception taken to the refusal to charge, the judgment should be reversed, and a new trial ordered, with costs to the appellant, to abide the event. All concur.