RILEY *et al.* v. BLACK.

*(City Court of New York, General Term. November 16, 1891.)*

CONTRACTS—INTERPRETATION.

    Parties to written contracts are bound by the express provisions thereof. A written contract for the regulating and grading of real property, which contains a provision that the owner "reserves the right to decide, after the rock has been uncovered, whether he will have the same removed or not," entitles him to decide that the same shall not be removed, and gives him the right to thereafter remove it himself, or cause others to remove the same.

*(Syllabus by the Court.)*

Appeal from trial term.

Action by William Riley and another against Alex. G. Black. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before VAN WYCK and FITZSIMONS, JJ.

*Bartlett, Wilson & Haden,* for appellant. *Samuel E. Duffy,* for respondents.

VAN WYCK, J. This action was based on a written contract, signed by plaintiffs and defendant, by which plaintiffs agreed to regulate and grade certain real property belonging to defendant, by excavating where the same was above the fixed grades, and filling in where the same was below such grades, for an agreed price of 25 cents per cubic yard of earth excavated and removed, $1.13 per cubic yard for rock so excavated and removed, and for building a stone culvert, 50 cents for each lineal yard so built. This contract contains the following provisions: "The party of the first part [defendant] reserves the right to determine when and where the rock found on said property shall be excavated, if at all," and "the party of the first part reserves the right to decide, after the rock has been uncovered, whether he will have the same removed or not, beyond such amount of rock as may be necessary to blast to build the drain or culvert." All the earth was excavated and removed, and the culvert completed under the contract, and for all of which the plaintiffs were paid in full. But after about 2,000 tons of rock had been uncovered the defendant decided that he would not have it removed by plaintiffs, claiming that these provisions of the contract were inserted in order that he might,

after the rock was uncovered and exposed to his view, determine whether it was hard or soft, tough or brittle, and whether he would pay the $1.13 per cubic yard, or have it excavated and removed for less, and he so notified the plaintiffs, to whom he made an offer to pay $1,700 in gross for excavating and removing this 2,000 tons of rock, which offer was refused by the plaintiffs, who claimed that, if this rock was to be moved at all, they had the right to so remove it, and were entitled to receive payment at the rate fixed by the contract for so excavating and removing rock; and which by such rate would amount to about $2,700, or $1,000 more than the offer.   The defendant, failing to come to any new agreement with plaintiffs, caused this 2,000 tons of rock to be removed by another contractor, and the plaintiffs bring this action to recover $1,000, the difference between the sum which they would have received had they been permitted to remove this rock and been paid for such removal at the rate fixed by the contract and the amount which it would have cost the plaintiffs to so remove the same.   The trial judge charged the jury that defendant was liable for such damages as plaintiffs had sustained by not having been permitted to remove this rock, and that the only question which the jury should determine was the amount of such damages.   The objections made and exceptions taken by defendant clearly bring this ruling up for review.   It would seem that this ruling was erroneous, for the plaintiffs themselves admit that under these provisions in the contract the defendant could at any time have legally refused to allow them to remove any or all of the rock after it had been uncovered and exposed to defendant's view; but plaintiffs contend that defendant had no right to have the rock removed by another contractor.   If the defendant had the right to stop the removal of rock by plaintiffs,—and he undoubtedly had such right,—then it cannot be seriously said that, after so preventing such removal, the defendant was forever barred from excavating and removing the rock from his property, or from causing it to be · so removed by hands other than his own or those of the plaintiffs.   These provisions of the contract would seem to be reasonable, for it certainly seems fair that the defendant should have provided that he, simply an owner, of no experience as to the quality and toughness or brittleness of rock not exposed to his view, should require the rock to be first uncovered in order that he might have a reasonable opportunity to determine for himself whether he would then pay the high rate for blasting and removing hard and tough rock, or the lower rate for excavating and removing soft and brittle rock, which was about one-third less than the former rate.   But, be that as it may, we find in the contract these express provisions, which explicitly give the defendant the right at any time to prevent the plaintiffs from excavating and removing from his property any or all of the rock after he had had an opportunity of examining it for himself.   Parties to written contracts must be bound by the express provisions thereof, and this rule was enforced by the court of appeals in what would, at first sight, seem a very harsh case, in *Jugla* v. *Trouttet,* 120 N. Y. 21, 23 N. E. Rep 1066..   There the plaintiffs, manufacturers at Paris, France, of the celebrated "D. Jugla" gloves, sold to defendant their stock of goods and the good-will of their business at New York for a fixed price, and agreed not to sell gloves of their manufacture to any other person in the United States, and the defendant agreed not to purchase gloves of a similar grade from any other person so long as the plaintiff should continue to manufacture such gloves.   Within one year thereafter the plaintiffs discontinued the manufacture of gloves, and sued defendant for an unpaid balance of the purchase price of the stock and good-will, and defendant resisted payment, claiming that, as the plaintiffs had discontinued manufacturing and supplying him with these celebrated gloves, the good-will was of no practical value whatever; but his claim was of no avail, and Judge BRADLEY, writing, says, "There is no opportunity to spell out or imply a covenant on the part of the plaintiffs to continue in the business of manufacturing, or which denied to

them the right at their pleasure to discontinue the production of gloves;" and that, "While it is very likely that the defendant made the purchase and assumed the business with a view to and in expectation of receiving from the plaintiffs for many years the "D. Jugla" gloves for his trade, the provisions of the contract will not bear the construction requisite to constitute an unqualified undertaking of the plaintiffs to continue the supply to him for any definite time, or for such time as the defendant should continue in business." So in this case there is no opportunity to spell out or imply a covenant on the part of the defendant that the plaintiffs should have the exclusive right to blast and excavate all of the rock from his property whenever he should determine to have it so removed therefrom. Hence this judgment in favor of plaintiffs must be reversed, with costs, and judgment ordered for defendant, dismissing the complaint, with costs.