CITY BANK FARMERS TRUST COMPANY, as Trustee for HELEN M. WIEGERS and Others under the Deeds of Trust Made by BERNARR MACFADDEN, Respondent, *v.* MARY MACFADDEN, Appellant, and BERNARR MACFADDEN et al., Respondents.

*Per Curiam.* The basic issue presented is whether Mr. Macfadden or the seven trusts which he created for the benefit of his children are to bear seven tenths of the cost of maintaining a home for Mrs. Macfadden alone, after the children have ceased to use the home. The question of Mr. Macfadden's personal liability, at a time when the trusts had no income, was considered in *Macfadden* v. *Macfadden* (268 App. Div. 968, affd. 294 N. Y. 781) and it was held that he had not obligated himself to pay any part of Mrs. Macfadden's household expenses. There remains for consideration the liability, if any, of the trusts, now that they have income, and the liability, if any, of Mr. Macfadden upon the trustee's refusal to contribute to the maintenance of a home for Mrs. Macfadden.

Appellant maintains that the trustees of the trusts are required to contribute to the cost of maintaining the home during her lifetime, regardless of whether the children derive any benefits as the result of such payments. We find no support for that contention. Whether contributions are to be made is a matter entirely within the discretion of the trustees. While the contributions they have made in the past may have incidently benefited appellant, she is in no position to require the trustees to continue the payments. She has no beneficial interest whatsoever in any of the trusts. They were established solely for the benefit of the settlor's children and mainly for the purpose of providing a home for them.

The decision of the trustees to discontinue the contributions toward the expenses of the Englewood house was concurred in by all of the children. At the time the decision was made none of the children lived there and it was apparent that they would not be benefited by the continuance of the payments. In those circumstances it may not be said that the action of the trustees was the result of an abuse of discretion or their submission to the alleged dominance of the settlor.

We find nothing in the record to support the claim that Mr. Macfadden is obligated to furnish a home for the sole use of Mrs. Macfadden. The only home contemplated by the parties was a family home where the children and Mrs. Macfadden, if she so desired, could live together. The obligation assumed by Mr. Macfadden was to provide such a place and he discharged that obligation by supplying the Englewood house which was the first of three alternatives set forth in the separation agreement. The establishment of the family home was intended primarily for the benefit of the children and sprung from a desire to keep them together in one household. No duty was imposed upon Mrs. Macfadden to use the Englewood house. The only obligation undertaken by her was the payment of three tenths of the cost of maintenance during the time she lived there. In other words, she was required to pay for her accommodations at the family home out of her own funds, just as she would be required to do if she set up a home for herself elsewhere.

The arrangement between Mr. and Mrs. Macfadden by their separation agreement is clear, and the relation of the children's trusts to that arrangement is likewise clear. Mrs. Macfadden was provided, through a trust for her sole benefit backed by a guarantee of Mr. Macfadden, with ample means for her sole and complete support. Upon the assumption that Mrs. Macfadden and the children would share a home, an allocation of the expense of maintaining such a joint home was made—three tenths to Mrs. Macfadden and one tenth to each of the seven children. It was never the intention that the children would contribute seven tenths and Mrs. Macfadden only three tenths of the expense of a home for her sole benefit. Now that the children have left and Mrs. Macfadden has only her own abode to maintain, she can and should maintain it from

her own assured income. Assuming that income will not exceed the guaranteed $15,000, although it does, it is ample to provide Mrs. Macfadden with living quarters and all other living expenses. The expense of the joint home that was maintained at Englewood was upwards of $20,000 a year, meaning that Mrs. Macfadden's contribution was $6,000 or more. She can maintain a home of her own on that amount and be prejudiced in no way by the separation of her establishment and maintenance expense from the children's. She need not stay in the Englewood mansion, and neither Mr. Macfadden nor the children's trusts are obliged to maintain her there or anywhere else. She may live wherever she pleases on the income which has been provided her for the purpose.

The judgments appealed from should therefore be affirmed, without costs.

DORE, J. (dissenting in part). On this appeal the sole issue requiring consideration is whether under the changed circumstances disclosed in this record Mr. Macfadden meets his obligation of supplying Mrs. Macfadden with " a home " by merely permitting her to use the large Englewood estate and requiring her to pay the maintenance thereof.

There is no dispute and Mr. Macfadden has never denied that under the terms of the separation agreement, in addition to the income payable to her individually during her life " for her sole use and benefit ", he is also obligated to provide her with a home. Over and beyond the payments to her individually, the separation agreement expressly refers to his " obligation to supply a home " for her and the children. Paragraph 14 of the agreement provides that such obligation shall be discharged in one of three ways: (a) by permitting her *and the children* to use the Englewood home; or (b) by his purchasing another home for not exceeding $50,000 and permitting her *and the children* to enjoy it during her life; or (c) by his building a $25,000 home on property in Nyack, in which event she shall have the right " in addition to the use of such home " to rent an apartment in New York or elsewhere. (Italics mine.) While (a) and (b) refer to a home for her and the children, it should be noted that (c) makes no reference to a home for the children but provides for a home and an apartment for her, and would seem to be the clause intended to apply in the state of facts disclosed for the first time in this record.

The separation agreement provided that it was the intention of the parties that all of the provisions therein and all the reciprocal provisions in the children's trusts for the support and maintenance of a home should be applied to any of the conditions set forth in subdivisions (a), (b) and (c) above relating to the duty to provide a home.

Mr. Macfadden now contends and the Special Term has sustained his contention that he has completely satisfied the additional obligation to provide a home by electing under (a) to permit Mrs. Macfadden " to use " the Englewood property without either he or the trusts supplying the "costs, expense, up-keep, maintenance and support of the home" during her life expressly referred to and provided for in the separation agreement. To understand the magnitude of such costs, it should be noted that over the years he certified to upwards of $20,000 a year.

The state of facts presented in this record is in salient aspects materially different from that in the prior action (*Macfadden* v. *Macfadden*, 268 App. Div. 968, affd. 294 N. Y. 781). In that action she sued him to compel him in his individual capacity to pay seven tenths of the maintenance of the Englewood estate which the children's trusts formerly had paid when they had income. At that time they did not have income and he took the position under oath at the trial and in the briefs on the appeals that such trusts and not he, individu-

ally, had the obligation of maintaining the Englewood estate. So clear was that contention made that the trial court in that case accepted it in his opinion and stated there was no obligation for support " other than that out of the trusts created " (i. e., three tenths from her trust and seven tenths from the children's trusts). That contention was strongly urged on this court and on the Court of Appeals for affirmance. Indeed, the Court of Appeals Reporter states that under " the provisions of the separation agreement and the various trust agreements the trustees were required to pay three tenths of the cost of maintaining the family home from the income of the wife's trust and one tenth from each of the children's trusts." Of course, there could be no adjudication binding on the trustees in that case as they were not parties. But the position Mr. Macfadden urged cannot be said to have no effect on the determination made. Now that there is income for the upkeep of the home, he takes a precisely contrary position to that which he successfully urged on all the courts, and maintains that neither he nor the trusts are liable and that therefore no one is liable. That, in my opinion, was never the intent of the parties.

But that is not all. In that case Mrs. Macfadden appeared to be in the indefensible position of insisting on remaining practically alone in the elaborate Englewood mansion with thirty rooms and eighteen acres of land and a number of servants after the children had moved and had homes of their own. In this record that is no longer the case. On this trial, Mr. Macfadden's counsel conceded that in September, 1943 (after completion of the prior trial), she disclaimed any desire to stay in the vast Englewood estate and expressly asked for a smaller $25,000 home, or its equivalent, on Nyack property and an apartment in New York under the provisions of subdivision (c) of the agreement.

In the light of the changed circumstances including her abandonment of any request that the Englewood home be maintained, it seems to me that it is exalting form over substance to say that he properly fulfills his conceded obligation to provide a home by merely permitting her " to use " the Englewood estate while none of the enormous costs of maintenance are paid either by him or the trusts. Such rule, I think, nullifies the obligation in substance while going through the appearance of fulfilling it in form.

In the prior case also there was failure of proof by her as plaintiff as to the amount required for maintenance. This is one of the points seriously urged on appeal before this court for affirmance by the defendant who devoted more pages in his brief to that point than to the other issue. Defendant in that case having rested at the close of plaintiff's case, affirmance could well have been made on the above-mentioned ground alone. This court affirmed without opinion. That is another factor distinguishing this appeal from the former, as in this case the proof is different and sufficient.

The terms of the children's trusts gave Mr. Macfadden express power to remove any trustee, bank or individual, without substituting any trustee in its or his place. The second judgment appealed from herein approved and confirms this power after his removal of the bank. Under these clauses of the trusts, of course, he can at any time remove all other individual trustees from all the children's trusts leaving himself as the sole surviving trustee. Those trusts also provide that when the children reach the age of twenty-one (and on this appeal they are all over that age) the individual trustee (Mr. Macfadden alone, if he so wills) is given express power, in his sole discretion (if all others are removed), " to annul " the children's trusts and turn over both principal and accumulated income to his foundation. The testimony at the trial must be read in the light of that background. To say in such state of facts that he does

not control and dominate the children's trusts and direct their action is unrealistic.

In this case also under one of the consolidated actions brought by her against him she is suing him in equity. Equity looks through the form and to the substance and molds its decree in accordance with what the parties may fairly be presumed to have intended, construes every contract as implying good faith and fair dealing, and avoids a construction which leaves one party to the mercy of the other (*Simon* v. *Etgen,* 213 N. Y. 589; *Schoellkopf* v. *Coatsworth,* 166 N. Y. 77, 84; *Utica City Nat. Bank* v. *Gunn,* 222 N. Y. 204, 208). As was said by CARDOZO, J., in the *Utica* case (*supra*), holding that the literal meaning made the transaction futile, " the genesis and aim of the transaction may rightly guide our choice ". In construing the obligation to provide a home we must look at the contract as a whole, the subject with which it deals, and the relationship of the parties at the time it was made including Mr. Macfadden's obligation, at that time, to support his wife which includes, of course, as the separation agreement expressly acknowledges, the obligation to afford her a home. At that time he had lived with her as man and wife for a score of years, she had borne him eight children, six of whom survived, and she also was rearing in the family home an additional child of his by a prior marriage. At or about that time he turned over to the Macfadden Foundation, which he controls, upwards of five million dollars and had purchased for himself a $24,000 annuity by the payment to an insurance company of about a quarter of a million dollars.

The children's trusts expressly stated that their prime purpose is to provide " *a* home for *all* of them " (italics mine). That language obviously means one common home for all, both children and mother collectively in a group, a most sensible thing at the time when they were young and needed the protecting care and training of the mother in the family home, the Englewood estate. That estate is no longer of use to the children as " a home for all of them ". None of them now is permanently there. Clearly also it is wholly inappropriate for the mother to live there alone. Mr. Macfadden's counsel fully recognizes this in his brief, and urges the change in circumstances to show that the primary purpose of the trusts " has become outmoded by the passage of time " and is a " useless expense " and that any decision other than to cease supporting such home might well be " an abuse of discretion." But as Mr. Macfadden concededly breaches his additional obligation if he does not supply some home, on this record it is now he and not she who in spite of all the changed circumstances persists in designating the elaborate Englewood estate as the home he must supply. Accordingly, he may not complain if she continues to reside there.

These aspects of the present record have not, in my opinion, been given sufficient weight. As the parties are here in equity, his action as dominant trustee preventing payment of any support for the Englewood home when she has consented to a smaller and far less expensive one should make him liable for the support of the Englewood home he has designated if the money which was available in the trusts for such payment is not now available.

Over the years since making the separation agreement, he has kept the provision requiring him to guarantee her an income of at least $15,000 a year. All the children are now of age. They do not live in the former family home. It is no longer necessary either for them or for the mother. Subdivision (c) seems to envisage the state of facts disclosed on this appeal. The Macfadden Foundation, which he controls, has the fee to the Englewood property. How much more sensible and, in the light of present conditions in New York, and its suburbs, how much more profitable it probably would be, to use the valuable

Englewood acreage for some purpose other than as a home for one person. By providing a smaller home for Mrs. Macfadden, pursuant to subdivision (c), he would fulfill the obligation he assumed and at the same time put the Englewood estate to valuable and possibly profitable use.

The majority opinion ends with the statement (*ante,* p. 1041) that Mrs. Macfadden "may live wherever she pleases on the income which has been provided her for the purpose." That does not answer the issue raised herein under the agreement in question as to Mr. Macfadden's obligation to provide a home; and as a suggested solution of such issue it ignores the undisputed fact that the separation agreement, over and above the income required to be paid to Mrs. Macfadden individually during her lifetime "for her sole use and benefit," in addition expressly contains the "obligation to supply a home".

Two judgments were entered herein. One, dated September 26, 1947, disposed of the issues relating to the removal of the bank as trustee. I concur that such judgment, so far as appealed from, should be affirmed. From affirmance, however, of the other judgment, dated September 25, 1947, in the consolidated action including her action in equity against him individually and as trustee, I dissent in part so far as appealed from and vote to modify by denying the motion to dismiss her action in equity against him and by granting her the relief prayed for in (b), (c) and (d) of the prayer for relief therein, so long as Mr. Macfadden, at least after the date on which Mrs. Macfadden consented to the smaller and less expensive home, persists in designating Englewood as the home he must provide, with a proviso, however, to be incorporated in the judgment that any party to the action may apply to the court at the foot of the decree for such other and further relief as may from time to time be necessary if Mr. Macfadden subsequently acts under the other provision of the agreement and in such case the judgment should provide for discharge of his obligation under the above-mentioned clause (c) of paragraph 14 of the agreement. As so modified I agree that the judgment, in other respects, so far as appealed from, should be affirmed.

Peck, P. J., Glennon, Callahan and Van Voorhis, JJ., concur in *Per Curiam* opinion; Dore, J., dissents in part in opinion.

Judgments affirmed, without costs.